AMERICAN UNION LINE, INC., Appellant, *v.* ORIENTAL
NAVIGATION CORPORATION, Respondent.

Appeal — contract — pleading — final judgment dismissing
complaint entered upon order of Appellate Division reversing
order denying motion for judgment and granting motion —
appeal may be taken to Court of Appeals without permission
— contract for purchase and sale of steamship — provision
protecting parties from liability for failure to perform —
refusal of War Shipping Board to consent to transfer of ship —
erroneous dismissal of complaint in action to recover amount
paid on purchase price — plaintiff not bound, as matter of
law, to assume that pledge of stock would prevent transfer
of vessel — plaintiff not obliged to bear consequences of failure
of performance of contract or to pay excessive amount
demanded for release of stock from pledgee.

1. An appeal lies, without permission, to the Court of Appeals
from a final judgment dismissing a complaint entered upon an order
of an Appellate Division, reversing an order of Special Term which
denied a motion by defendant for judgment on the pleadings, and
granting said motion.

2. This appeal involves the question whether a cause of action is
stated by the complaint in an action to recover moneys paid on a con-
tract for the purchase of a ship under a clause in said contract that
such recovery might be had where consummation of the contract was
prevented by causes beyond the control of the parties. It is held that
a cause of action is stated by a complaint alleging that plaintiff and
defendant entered into a contract for the purchase and sale of a steam-
ship, with a clause protecting both parties from legal responsibility for
failure to transfer the vessel as the result of any cause beyond their con-
trol and providing, in such event, for the return by defendant of moneys
paid by the plaintiff; that at the time of making the agreement all of
the capital stock of plaintiff, a corporation organized under the laws of
the State of New York, had been placed in escrow with a citizen of
the United States, under an agreement between the stockholder,
who was also a citizen, and a Danish corporation, that such stock
should be held in trust until the amount owing to said Danish
corporation should be paid, whereupon the stock should be delivered
to the stockholder or his designees, and that by reason thereof the
War Shipping Board refused, under the United States Shipping Act
and the United States Trading with the Enemy Act, to consent to

the transfer of the ship on the ground that it did not satisfactorily appear that plaintiff's stock was owned by citizens of the United States; also alleged that the Danish corporation demanding payment of the sum of $100,000, of which sum only a small amount was due to it, the stockholder commenced an action against said corporation, to have ascertained the amount of the indebtedness, and that plaintiff made every possible effort to secure a statement from and settlement with the Danish corporation, to expedite said litigation and to procure governmental consent to the transfer of the vessel but that it was not able until after the date for transfer of the ship to secure a judgment which fixed the amount of the indebtedness at less than two per cent of the amount demanded.

3. There are no allegations in the complaint which disclose that the plaintiff corporation at the time the contract was executed was responsible for or knew of the deposit of its capital stock. Hence, it cannot, upon the ground of such knowledge and of defendant's ignorance thereof, be prevented from recovering back moneys voluntarily paid on the contract. But, even if chargeable with knowledge of the situation of its capital stock, the allegations of the complaint do not lead to the conclusion, as matter of law, that plaintiff was bound to assume that such situation was or would prove an irremovable obstacle to the transfer of the vessel. The plaintiff might reasonably apprehend, or at least a jury might so say, that, within the time between the date of the contract and the date for transfer, a settlement of the indebtedness either by negotiation or litigation would be obtained and transfer of the stock completed. Further, the plaintiff was not bound, as matter of law, to anticipate that the government would prohibit a transfer by reason of the existence of this indebtedness.

4. A suggestion that plaintiff knew that by reason of the deposit of its stock the agreement for the transfer of the vessel could not be consummated without the consent of the governmental boards; that it paid its money on a conditional or inchoate contract and that when the contract failed because of lack of such consent it must bear the consequences, cannot be sustained. The complaint does not show upon its face that there was any affirmative misrepresentation by plaintiff in respect of its capacity to buy or any concealment from defendant of a known incapacity.

5. Nor was it the duty of plaintiff to relieve both the vendor and itself from inability to consummate the contract by paying the excessive amount demanded by the Danish corporation. There was an excuse provided by the parties for non-performance of a contract made in the midst of war conditions where both parties must have assumed that consummation might be prevented by some unexpected obstacle due to such conditions. The control which the parties contemplated

should be exercised by the one charged with that obligation meant in this case the exercise of those ordinary and reasonable methods which a person would exercise under the circumstances for the purpose of getting rid of an obstacle which arose to the consummation of this particular contract and did not mean a control purchased by submission to duress or surrender to blackmail.

*American Union Line* v. *Oriental Navigation Corp.*, 209 App. Div. 260, reversed.

(Argued October 15, 1924; decided December 16, 1924.)

APPEAL from a judgment, entered May 28, 1924, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed an order of Special Term denying a motion to dismiss the complaint and granted said motion.

*Frederick B. Campbell* for appellant. Clause 7 of the contract between the parties imposed no affirmative obligation upon either party; the decision of the court below to the contrary is error. (*The Claveresk*, 264 Fed. Rep. 276; *The Isle of Mull*, 278 Fed. Rep. 131; 257 U. S. 662; *The Hellig Olav*, 282 Fed. Rep. 534; *The Baron Ogilvy*, 256 U. S. 619; *The Allanwilde*, 248 U. S. 377; *The Styria*, 186 U. S. 1; *The Kronprinzessin Cecelie*, 244 U. S. 12; *Quina Export Co.* v. *Seebold*, 287 ed. Rep. 626; *Nitro Powder Co.* v. *Canadian C. & F. Co.*, 233 N. Y. 294; *Maurer Co.* v. *Tubeless Tire Co.*, 272 Fed. Rep. 990; *Atlantic Steel Co.* v. *Campbell Coal Co.*, 262 Fed. Rep. 555.)

*Herman S. Hertwig* and *Russell T. Mount* for respondent. Under the terms of the contract the plaintiff could be relieved of its obligation to purchase the vessel and entitled to the return of the earnest money only if performance of the obligation were prevented by a cause beyond the plaintiff's control. The complaint shows no such situation and was properly dismissed. (*Miller* v. *Schloss*,

14

218 N. Y. 400; *Traylor* v. *Crucible Steel Co.*, 192 App. Div. 445; 232 N. Y. 583; *Cottrell* v. *Smokeless Fuel Co.*, 148 Fed. Rep. 594; 205 U. S. 544; *First Nat. Bank* v. *United States*, 206 Fed. Rep. 374; *D., L. & W. R. R.* v. *Bowns*, 4 J. & S. 126; *Board of Commerce* v. *Trust Co.*, 225 Fed. Rep. 454; *Dunn* v. *Bucknell Bros.*, 2 K. B. [1902] 614; *Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377; *Columbus R. & P. Co.* v. *Columbus*, 249 U. S. 399.)

HISCOCK, Ch. J.   There was made between plaintiff and defendant in February, 1918, a contract for the purchase and sale of a steamship at the price of $185,000 and of which $50,000 was paid at or before the execution of the agreement.   In addition to many other provisions which are not involved in the present controversy, the contract contained a clause whose interpretation is decisive of this appeal.   Said clause reads as follows: " 7. Neither party to this contract shall become liable to the other in any manner whatsoever for failure to perform this contract owing to perils of the seas or of navigation, arrests, restraints or acts of princes, rulers, governments or people, or owing to any other cause beyond the control of any such party.   Provided, however, that in the event that this contract shall be or become impossible of performance owing to the causes hereinabove mentioned or any of them, the sums paid to the Vendor by the Purchaser shall be forthwith repaid to the Purchaser by the Vendor without interest."

The following controlling facts calling for the interpretation of said clause are alleged in the complaint, which has been dismissed as not stating a cause of action for the recovery back under said clause of the amount paid on the contract.   The plaintiff is a corporation organized under the laws of the State of New York.   At the time the agreement was made all of its capital stock had been placed in the possession of one Engel, who was a citizen of the United

States, under a written agreement dated June 20, 1917, between the Interchange Limited a Danish corporation, and one Shapiro a citizen of the United States, whereby it was provided that said stock was to be held by said Engel in trust until the amount owing by plaintiff to said Interchange Limited should have been paid and that on the payment of such indebtedness Engel should deliver to Shapiro or his designees all of the capital stock thenceforth to be his or their property free, clear and discharged of all claims or interest therein of said Interchange Limited. Said agreement also contained the provision that prior to June 23, 1917, a statement of the amount due from plaintiff to Interchange should be prepared and certified in writing by Interchange and Shapiro and which amount should be paid within a certain time therein specified. Notwithstanding repeated demands and attempts by plaintiff to procure it so to do said Interchange, which had possession of the necessary books and papers, neglected and refused to prepare or certify any statement of the indebtedness claimed to be due to it from plaintiff and finally demanded the payment of the sum of $100,000, which amount was not due to it and which plaintiff and Shapiro declined to pay.

In May, 1918, the War Shipping Board having ascertained the situation of this capital stock refused under certain statutory provisions, to which reference will hereafter be made, to consent to the transfer of the ship as provided in the agreement between plaintiff and defendant and continued in this decision notwithstanding all of the efforts of plaintiff to procure it to modify the same. The ground of such decision was that under the situation hereinbefore disclosed and the United States statutes pertaining to such subject it did not satisfactorily appear that plaintiff's stock was owned by citizens of the United States. In accordance with an informal suggestion made by the Board that no consent would be given to such transfer until the rights of Shapiro to the ownership of

plaintiff's capital stock had been duly adjudicated by a court of competent jurisdiction, Shapiro commenced an action in the United States Court against said Interchange and to which plaintiff was made a party, asking to have ascertained the amount of indebtedness for which said capital stock was being held and to have the ownership of said · stock by said Shapiro adjudicated. Notwithstanding every possible effort was made by plaintiff to expedite said suit it was not able until after the date for the transfer of said ship had passed to secure judgment in said suit and which fixed the amount of the indebtedness due from plaintiff to said Interchange at $1,702.66 instead of $100,000 which said Interchange had demanded. By general as well as special statements it is alleged that plaintiff made every possible effort to secure a statement from and settlement with Interchange, to expedite said litigation and to procure the governmental consent to the transfer of the vessel. Upon these allegations and others which supplement but do not change the tenor thereof a demand for the return of $50,000 which plaintiff had paid on the contract is based under the provision in the contract first above quoted, on the ground that performance of the contract had become impossible.

These allegations are to be considered in the light of certain United States statutes known as the United States Shipping Act and the United States Trading with the Enemy Act and of which the provisions of the Shipping Act are the ones especially applicable to this case. They prohibited the transfer of any vessel such as was the one involved in this case to any one not a citizen without the approval of the Shipping Board and defined citizenship in the case of a corporation as follows: " No corporation * * * shall be deemed a citizen of the United States unless the controlling interest therein is owned by citizens of the United States." It was under this provision that the governmental boards created

refused to permit the transfer of the vessel because of the situation of plaintiff's capital stock, which has been fully described.

With this rather lengthy but necessary statement of facts we come to the questions presented by the appeal. Some contention is made that it will not lie without permission, which was not obtained. We think that there is nothing in this argument. The Special Term denied defendant's motion for judgment on the pleadings; the Appellate Division reversed this action and made an order granting said motion and also, on the motion of defendant's counsel with the consent of plaintiff's counsel, made an order severing into a separate action plaintiff's alleged cause of action. On this order final judgment was entered dismissing plaintiff's complaint which is to be regarded as one of reversal. (*Sultzbach* v. *Sultzbach,* 238 N. Y. 353.) We, therefore, have a final judgment dismissing plaintiff's complaint and see no reason why the appeal does not lie. This brings us to a consideration of the merits of the appeal and leads us back to the clause relating to impossibility of performance which has already been quoted and which we are called on to interpret from the standpoint of the plaintiff for the purpose of deciding whether under it the complaint does allege a right to the recovery of the money paid on the contract.

The provision consists of two entirely distinct clauses. The first one protects this defendant from legal responsibility for failure to transfer the vessel as the result of any cause beyond its control and no attempt is now being made by plaintiff to recover damages for breach of contract. The second clause literally entitles the plaintiff to recover back the moneys paid on the contract if defendant has been prevented from performance by a cause beyond its control and, concededly, such cause has arisen.

We shall assume, however, upon the allegations of the

complaint that our interpretation ought not to be literal but should embrace two qualifications of plaintiff's right to recover back its money although defendant was prevented from consummating the contract. We shall assume that if at the time the contract was executed plaintiff was aware of a situation of which the defendant was ignorant and which the plaintiff knew or ought to have known then did prevent or thereafter would prevent the consummation of the contract, it cannot recover back moneys voluntarily paid on the contract under such circumstances.

And *secondly*, we shall assume that if after the contract was made a situation arose attributable in whole or part to the plaintiff, although not acting in bad faith, which prevented the consummation of the contract but which, in the language of the clause was not " beyond the control " of itself, it was its duty to remove such cause and in case of its failure so to do it cannot recover back the money which it has paid on the contract.

The question is whether plaintiff comes within either of these qualifications. We do not think that it does.

In the first place we fail to find any allegations in the complaint which disclose that the plaintiff corporation at the time the contract was executed was responsible for or knew of the deposit of its capital stock in the manner hereinbefore described. It is well established that a corporation is a creation ordinarily separate and distinct from one of its stockholders even though that stockholder owns the control of its capital stock. There is nothing in the complaint disclosing the relationship of Shapiro, the stockholder, to the plaintiff corporation or to its capital stock prior to the time when the same was deposited in escrow or that plaintiff was a party to such deposit. He does not appear as one of plaintiff's officers executing the contract and the deposit of the stock may have been made without any knowledge on its part either actual or imputable. There are allegations

of a relationship between plaintiff and payment of the indebtedness for which the stock was held and from which very possibly if proved the inference of fact might be drawn that plaintiff was a party to and knew all about the transaction at the time it executed this contract. But we are not dealing with questions of fact; we are considering the question whether as matter of law this complaint on its face closes the door to the relief which plaintiff is seeking.

In the second place we do not believe that the allegations of the complaint lead to the conclusion as matter of law that plaintiff, even if chargeable with knowledge of the situation of its capital stock, was bound to assume that such situation was or would prove an irremovable obstacle to the transfer of the vessel. The agreement under which the stock was deposited is not very completely set forth in the complaint. It does not appear who had previously held the title to the stock and had deposited it with the stakeholder. It does appear that the substance of the agreement was a deposit of the stock as security for the payment of an indebtedness. It is true that prior to the execution of the agreement the plaintiff and Interchange had come to a deadlock in respect of the amount of this indebtedness. But eight months intervened between the date of the contract and the date for transfer of the ship and the plaintiff might reasonably apprehend, or at least the contrary cannot be said as matter of law, that within that time either more successful negotiations would be voluntarily concluded by the parties or that by litigation such as was thereafter instituted, a settlement of the indebtedness would be obtained and transfer of the stock completed. But further, the existence of this indebtedness was the only thing which could justify the governmental boards in withholding their approval of transfer and even if it was not settled we do not think that as matter of law the plaintiff was bound to anticipate that the government would prohibit a transfer.

Plaintiff was an American corporation; Shapiro, the stockholder, was an American citizen and the stakeholder was an American citizen and the stock, as we have pointed out, was really held as security for the payment of an indebtedness and there was no limit upon the term within which the indebtedness could be paid and possession obtained of the stock free from any claims. Under these circumstances we think it became a question of fact and judgment for the governmental boards to decide whether plaintiff came within the meaning of the statute that " no corporation  *  *  *  shall be deemed a citizen of the United States unless the controlling interest therein is owned by citizens of the United States," and the War Board might have found that under that statute this stock, in the hands of a citizen and going to a citizen and simply held as security for the payment of indebtedness to an alien, was " owned by a citizen of the United States." Certainly we do not think that plaintiff as matter of law on these allegations was bound to assume that it would hold adversely to it on that question.

It is suggested that plaintiff knew that by reason of the deposit of its stock the agreement for the transfer of the vessel could not be consummated without the consent of the governmental boards; that it paid its money on a conditional or inchoate contract and that when the contract failed because of lack of such consent it must bear the consequences. This argument suggests considerations rather akin to those already discussed.

If plaintiff did not participate in or know of the deposit of the stock, this view suggested is not applicable. If it did know of the deposit of the stock, we do not think that it was bound to appreciate that such deposit would disqualify it from being a " citizen " under the statute, and if it did not, no consent was necessary. Therefore, we do not think that on the face of the complaint plaintiff is to be charged as matter of law with having made a contract to whose consummation a bar had been

erected by itself and for which, therefore, it could have no relief. To sum up, we think the complaint does not show upon its face that there was any affirmative misrepresentation by plaintiff in respect of its capacity to buy, or any concealment from defendant of a known incapacity. If the litigation of such issues becomes necessary upon the trial, it will be in connection with the defense of fraud pleaded in the defendant's answer, the sufficiency of which is not before us on this appeal.

Thus we come to the final question whether the situation which arose out of the deposit of plaintiff's stock and which became a bar to the transfer of the vessel as set forth in the complaint, was one which could not be said to be beyond its control within the provisions of the contract but, on the other hand, was one which should have been eliminated by it. This question of course resolves itself into the final inquiry whether it was the duty of plaintiff to relieve both the vendor and itself from inability to consummate this contract by paying the excessive amount demanded by the Interchange Limited as a condition of releasing the stock, for it is plainly and broadly and repeatedly alleged by the complaint that the plaintiff did everything it reasonably could both by negotiation, by application to the governmental boards and by litigation to get rid of its dispute. Within a fair interpretation of the clause which governs the decision of this question we do not think that it was the duty of plaintiff to pay the Interchange Limited $100,000 when it actually owed it only $1,702 in order to secure the release of its stock.

This case, in our opinion, is not at all governed by the authorities cited by and in behalf of the defendant and in which it is held that a person positively and specifically contracting to do a certain thing as, for instance, to lay a pavement or erect a building, is not relieved from his contract because through increased cost its performance is made more burdensome. In such a case performance

of a definite agreement is not excused because of some incident which makes its performance more expensive. In this particular case if the plaintiff had agreed that within a certain period it would procure a discharge of the claims of the Interchange Limited and thus release its stock, we assume that it would be responsible for failure to perform this agreement even though the indebtedness was larger than it had expected. But such is not this case. We are not dealing with a positive agreement to do something and of which performance will not be excused for what we may term equitable considerations. On the other hand, we are dealing with an excuse provided by the parties for non-performance of a contract. This contract was made in the midst of war conditions and both parties must have assumed that its consummation might be prevented by some unexpected obstacle due to such conditions and that under such circumstances liability for damages for non-performance ought not to be imposed provided the parties were restored to their original condition. The excuse for non-performance was made for the benefit of both parties and not as a matter of favor to one. It provided for an excuse based on specified causes and then not content with this it enumerated the general cause of something beyond the control of the parties. Under such circumstances we do not think that the clause is to have the rigid construction which would be applied to an agreement of performance but that it is to have the reasonable interpretation which the parties must have contemplated when they were seeking to provide for protection against the legal consequences which otherwise might flow from a failure to consummate their contract because of some unanticipated reason. It hardly seems possible that these parties by the word " control " used under these circumstances meant the widest boundaries of possibility no matter at what cost or consequence. Because, of course, if defendant is right that this clause required plaintiff to pay $100,000

to satisfy a real indebtedness of $1,702 the same argument would compel it to pay $1,000,000 or any other sum within its financial capacity to satisfy the indebtedness. We think that the control which the parties contemplated should be exercised by the one charged with that obligation meant in this case the exercise of those ordinary and reasonable methods which a person would exercise under the circumstances for the purpose of getting rid of an obstacle which arose to the consummation of this particular contract, and did not mean a control purchased by submission to duress or surrender to blackmail.

While they do not treat of this precise question we think that in principle the following authorities sustain the interpretation which we have placed on the contract: *D., L. & W. R. R. Co.* v. *Bowns* (58 N. Y. 573); *Mineral Park Land Co.* v. *Howard* (172 Cal. 289); *Columbus Ry., P. & L. Co.* v. *City of Columbus* (249 U. S. 399).

These views lead to the conclusion that it was error to dismiss the plaintiff's complaint which we think under this appeal is the only question before us.

The judgment of the Appellate Division should be reversed and order of Special Term denying defendant's motion for judgment on the pleadings affirmed, with costs in this court and in the Appellate Division.

CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; LEHMAN, J., not sitting.

Judgment accordingly.