CANADIAN INDUSTRIAL ALCOHOL COMPANY, LTD., Respondent, *v.* DUNBAR MOLASSES COMPANY, Appellant.

(Argued December 3, 1931; decided January 5, 1932.)

*Jay Leo Rothschild, Louis Rivkin* and *Walter S. Beck* for appellant. The contract between the parties contemplated the purchase of specific and identified molasses, the failure of which to come into existence terminated the obligations of both. Future unascertained goods may be specific goods within this rule. It is not necessary that they be presently identified and appropriated to the contract. (*Nitro Powder Co.* v. *Agency of C. C. & F. Co.*, 233 N. Y. 294; *Taylor* v. *Caldwell*, 3 Best & S. 826; *Dexter* v. *Norton*, 47 N. Y. 62; *Stewart* v. *Stone*, 127 N. Y. 500; *Goldman* v. *Rosenberg*, 116 N. Y. 78; *International Paper Co.* v. *Rockefeller*, 161 App. Div. 180.) Where the parties contract with reference to a subject-matter subsequently to come into existence, and such subject-matter does not come into existence, the obligations of both are dissolved by reason of the implied condition that it should have come into existence. (*Howell* v. *Coupland*, 1 Q. B. D. 258; *Scialli* v. *Correale*, 97 N. J. L. 165; *Whipple* v. *Lyons Beet Sugar Refinery Co.*, 64 Misc. Rep. 363; 137 App. Div. 881; 202 N. Y. 522; *Nitro Powder Co.* v. *Agency of C. C. & F. Co.*, 233 N. Y. 294; *Clarksville Land* v. *Harriman*, 68 N. H. 374; *Ontario Fruit Growers* v. *Cutting Fruit Packing Co.*, 134 Cal. 21; *Marks Realty Co.* v. *Hotel Hermitage Co.*, 170 App. Div. 484; *Krell* v. *Henry*, [1903] 2 K. B. 740; *Maidment* v. *Krauss Milling Co.*, 225 App. Div. 492; *Mc Kenna* v. *Mc Namee*, 15 Can. Sup. Ct. 311.) Where the parties contract with reference to a subject-matter predicated upon a basis or factor which it is assumed will continue to function and make performance possible, then the failure of that basis or factor to function, irrespective of the cause, as long as it be due to no fault of the parties, dissolves the obligation of both. (*Lorillard* v. *Clyde*, 142

N. Y. 456; *Texas Co.* v. *Hogarth Shipping Co.*, 256 U. S. 619; *Nitro Powder Co.* v. *Agency of C. C. & F. Co.*, 233 N. Y. 294.) The letters should have been admitted in evidence to show the setting in which the contract was made. (*Atterbury* v. *Bank of Washington Heights*, 241 N. Y. 231; *White's Bank of Buffalo* v. *Myles*, 73 N. Y. 335; *French* v. *Carhart*, 1 N. Y. 96; *Emmitt* v. *Penoyer*, 151 N. Y. 564; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Tamplin S. S. Co.* v. *Anglo Mexican Pet. Products Co.*, [1916] 2 A. C. 397.) It was error to permit recovery on the basis of market value, and to exclude evidence of plaintiff's ability to obtain other molasses from defendant at a lesser cost. (*Saxe* v. *Penokee*, 159 N. Y. 371; *Lawrence* v. *Porter*, 63 Fed. Rep. 62; *Siegel* v. *Huebshman*, 187 App. Div. 548; *Silberman* v. *Faber Piano Co.*, 190 N. Y. Supp. 629.)

*George de Forest Lord, Thaddeus G. Cowell* and *Jesse Hoyt* for respondent. The contract was unconditional and defendant cannot avoid its unrestricted undertaking because of the failure of a third party to manufacture the molasses which defendant expected to obtain in time to make delivery to the plaintiff. (*Marsh* v. *Johnston*, 125 App. Div. 597; 196 N. Y. 511; *Krulewitch* v. *National Importing & Trading Co.*, 195 App. Div. 544; *Richards & Co.* v. *Wreschner*, 174 App. Div. 484; *Boker* v. *Demorest Mfg. Co.*, 28 Misc. Rep. 263; *Cannistraci* v. *Chieves & Co.*, 165 N. Y. Supp. 933; *Booth* v. *Spuyten Duyvil Rolling Mill Co.*, 60 N. Y. 487; *Ciocca-Lombardi Wine Co.* v. *Fucini*, 204 App. Div. 392; 236 N. Y. 584; *Whitehouse* v. *Staten Island Water Co.*, 101 App. Div. 112; *Hecla Powder Co.* v. *Sigua Iron Co.*, 91 Hun, 429; 157 N. Y. 437; *Bigler* v. *Hall*, 54 N. Y. 167; *Thomas* v. *Dickinson*, 23 Barb. 431; *Beebee* v. *Johnson*, 19 Wend. 500; *Day* v. *United States*, 245 U. S. 159; *Northern Pac. Ry. Co.* v. *Amer. Trading Co.*, 195 U. S. 439; *Jacksonville, etc., Railway* v. *Hooper*, 160 U. S. 514; *The Harriman*, 76

U. S. 161; *Dermott* v. *Jones*, 2 Wall. 1; *City of Minneapolis* v. *Republic Creosoting Co.*, 161 Minn. 178; *Kingsville Cotton Oil Co.* v. *Dallas Waste Mills*, 210 S. W. Rep. 832; *Roberts* v. *Lumber Co.*, 76 W. Va. 290; *Pennsylvania R. Co.* v. *Reichert*, 58 Md. 261; *Stone* v. *Dennis*, 3 Porter [Ala.], 231.) It was not error to exclude the letters. (*Elefante* v. *Pizitz*, 182 App. Div. 819; *Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1; *Chelsea Exchange Bank* v. *Weinstein*, 248 N. Y. Supp. 47.) A purchaser is not bound to accept goods from a defaulting seller when the goods are offered at a price higher than the price named in the contract. (*Havemeyer* v. *Cunningham*, 35 Barb. 515; *Saxe* v. *Penokee Lumber Co.*, 159 N. Y. 371.)

CARDOZO, Ch. J. A buyer sues a seller for breach of an executory contract of purchase and sale.

The subject-matter of the contract was " approximately 1,500,000 wine gallons Refined Blackstrap [molasses] of the usual run from the National Sugar Refinery, Yonkers, N. Y., to test around 60% sugars."

The order was given and accepted December 27, 1927, but shipments of the molasses were to begin after April 1, 1928, and were to be spread out during the warm weather.

After April 1, 1928, the defendant made delivery from time to time of 344,083 gallons. Upon its failure to deliver more, the plaintiff brought this action for the recovery of damages. The defendant takes the ground that, by an implied term of the contract, the duty to deliver was conditioned upon the production by the National Sugar Refinery at Yonkers of molasses sufficient in quantity to fill the plaintiff's order. The fact is that the output of the refinery, while the contract was in force, was 485,848 gallons, much less than its capacity, of which amount 344,083 gallons were allotted to the defendant and shipped to the defendant's customer.

The argument for the defendant is that its own duty to deliver was proportionate to the refinery's willingness to supply, and that the duty was discharged when the output was reduced.

The contract, read in the light of the circumstances existing at its making, or more accurately in the light of any such circumstances apparent from this record, does not keep the defendant's duty within boundaries so narrow. We may assume, in the defendant's favor, that there would have been a discharge of its duty to deliver if the refinery had been destroyed (*Stewart* v. *Stone*, 127 N. Y. 500; *Dexter* v. *Norton*, 47 N. Y. 62; *Nitro Powder Co.* v. *Agency of C. C. & F. Co.*, 233 N. Y. 294, 297), or if the output had been curtailed by the failure of the sugar crop (*Pearson* v. *McKinney*, 160 Cal. 649; *Howell* v. *Coupland*, 1 Q. B. D. 258; 3 Williston on Contracts, § 1949) or by the ravages of war (*Matter of Badische Co.*, [1921] 2 Ch. 331; *Horlock* v. *Beal*, [1916] 1 A. C. 486) or conceivably in some circumstances by unavoidable strikes (*American Union Line* v. *Oriental Navigation Corp.*, 239 N. Y. 207, 219; *Normandie Shirt Co.* v. *Eagle, Inc.*, 238 N. Y. 218, 229; *Delaware, L. & W. Co.* v. *Bowns*, 58 N. Y. 573; and cf. *Blackstock* v. *New York & Erie R. R. Co.*, 20 N. Y. 48; also 2 Williston on Contracts, § 1099, pp. 2045, 2046). We may even assume that a like result would have followed if the plaintiff had bargained not merely for a quantity of molasses to be supplied from a particular refinery, but for molasses to be supplied in accordance with a particular contract between the defendant and the refiner, and if thereafter such contract had been broken without fault on the defendant's part (*Scialli* v. *Correale*, 97 N. J. L. 165; cf., however, *Marsh* v. *Johnston*, 125 App. Div. 597; 196 N. Y. 511). The inquiry is merely this, whether the continuance of a special group of circumstances appears from the terms of the contract, interpreted in the setting of the occasion, to have been a tacit or implied presupposition in the minds of the

contracting parties, conditioning their belief in a continued obligation (*Tamplin S. S. Co.* v. *Anglo-Mexican P. P. Co.*, [1916] 2 A. C. 397, 406, 407; *Blackburn Bobbin Co.* v. *Allen & Sons, Ltd.*, L. R. [1918] 1 K. B. 540; *Lorillard* v. *Clyde*, 142 N. Y. 456; 3 Williston on Contracts, § 1952).

Accepting that test, we ask ourselves the question what special group of circumstances does the defendant lay before us as one of the presuppositions immanent in its bargain with the plaintiff? The defendant asks us to assume that a manufacturer, having made a contract with a middleman for a stock of molasses to be procured from a particular refinery would expect the contract to lapse whenever the refiner chose to diminish his production, and this in the face of the middleman's omission to do anything to charge the refiner with a duty to continue. Business could not be transacted with security or smoothness if a presumption so unreasonable were at the root of its engagements. There is nothing to show that the defendant would have been unable by a timely contract with the refinery to have assured itself of a supply sufficient for its needs. There is nothing to show that the plaintiff in giving the order for the molasses, was informed by the defendant that such a contract had not been made, or that performance would be contingent upon obtaining one thereafter. If the plaintiff had been so informed, it would very likely have preferred to deal with the refinery directly, instead of dealing with a middleman. The defendant does not even show that it tried to get a contract from the refinery during the months that intervened between the acceptance of the plaintiff's order and the time when shipments were begun. It has wholly failed to relieve itself of the imputation of contributory fault (3 Williston on Contracts, § 1959). So far as the record shows, it put its faith in the mere chance that the output of the refinery would be the same from year to year, and finding its faith vain,

it tells us that its customer must have expected to take a chance as great. We see no reason for importing into the bargain this aleatory element. The defendant is in no better position than a factor who undertakes in his own name to sell for future delivery a special grade of merchandise to be manufactured by a special mill. The duty will be discharged if the mill is destroyed before delivery is due. The duty will subsist if the output is reduced because times turn out to be hard and labor charges high (cf. *Day* v. *United States*, 245 U. S. 159, 161; *Northern Pac. Ry. Co.* v. *American Trading Co.*, 195 U. S. 439, 467).

The defendant assigns as error the exclusion of correspondence that passed between itself and the plaintiff after April 10, 1928, when deliveries began. The letters, if received, would not have affected the result.

Error also is assigned in a ruling as to damages.

The plaintiff kept the contract alive till October 25, 1928, when it gave notice that it would go out into the open market, buy what molasses it required, and charge the defendant with the difference.

On June 27, 1928, while the defendant was still holding out the hope that deliveries might be made, it offered to supply the plaintiff with other molasses (400,000 gallons), the output of a different refinery, at six and one-half cents per gallon, about a cent less than the average market price in June. The offer was coupled with a notice that it would be deemed to be revoked unless the plaintiff's order for the molasses so offered was received by the defendant not later than July 2.

The price quoted in this offer was less than the market price in June, but substantially more than the price (four and three-quarters cents per gallon) at which the plaintiff had agreed to buy.

We see no merit in the claim that plaintiff, while still keeping the contract open, was chargeable with a duty to accept the substitute for performance tendered by the

delinquent seller (*Havemeyer* v. *Cunningham*, 35 Barb. 515).

The defendant, in making the tender, did not suggest that the plaintiff was under a duty to accept it. The tender was made " not as a matter of obligation," but for accommodation solely. The plaintiff might accept or reject as it preferred.

Another tender of substituted performance was made by the defendant on October 26, 1928, upon receipt of notice from the plaintiff that there would be a purchase in the market. Again in a spirit of " accommodation " the defendant made a tender, not of molasses, but of another contract for molasses. " We are willing to let you have 400,000 to 850,000 gallons of molasses, at our option, 7-1/4 ¢ per gallon, f. o. b., New York or Philadelphia," the offer to be deemed revoked if not accepted by return mail. The market price at that time was about one-half a cent higher.

The plaintiff replied in substance that it had no longer any faith in the defendant's readiness or ability to live up to its engagements, and did not wish to add another contract to the one already broken.

The law did not charge it with a duty to make such an experiment again.

Other rulings complained of by the defendant have been considered, and no error has been found in them.

The judgment should be affirmed with costs. (See 258 N. Y. 603.)

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.