## MENIHAN v. COMMISSIONER OF INTERNAL REVENUE. *

### No. 377.

Circuit Court of Appeals, Second Circuit.
July 29, 1935.

Jacob Ark, of Rochester, N. Y., for appellant.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and ·J. P. Jackson, Sp. Assts. to Atty. Gen., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

In 1924, the petitioner, a resident of Rochester, N. Y., was president of the Menihan Company, a New York corporation, engaged in the business of manufacturing ladies' shoes. The ·corporation's capital stock consisted of 500 shares, of which the petitioner owned 497 and controlled the other 3, which stood in the name of his nominees for qualification purposes. During the three years immediately preceding, the corporation had expanded rapidly, and in 1924, because of a serious strike in one of its plants coupled with adverse trade conditions, it had become insolvent. The petitioner had indorsed its notes and guaranteed its accounts to the amount of $655,695.14 and had also become insolvent.

With the affairs of his corporation and himself in this situation, he applied to creditors for an adjustment in an endeavor to avoid bankruptcy proceedings and save the business if possible. A creditors' committee was formed to which he transferred all the Menihan Company stock to enable it to assume complete control of the business. A voting trust agreement was subsequently made under which the stock was held. The creditors' committee took over the business and employed the petitioner to manage it at a salary plus a percentage of the net profits above an amount stated. A plan of reorganization was finally agreed to by all concerned which provided that the bank creditors of the corporation should receive, in full satisfaction of the liability of the corporation on their claims, bonds of the

corporation of the face value of 50 per cent. of their claims secured by a mortgage upon the real estate of the corporation subject to existing liens, and that all other creditors should accept the promissory notes of the corporation to the amount of 50 per cent. It was agreed that the voting trust should continue for the protection of the creditors until the bonds and notes were paid in full. The petitioner also agreed that the acceptance by creditors of the corporation's offer of compromise "shall in no wise lessen, modify, alter or release me from any liability on account of any endorsement or guaranties which I may have heretofore given on account of the Menihan Company." The petitioner reached an agreement with the creditors of the corporation holding paper he had indorsed or claims he had guaranteed to pay 15 per cent. of those debts in full discharge of his personal liability upon the express condition that his payment of the 15 per cent. should not be made the basis of any claim by him against the company. To secure the payment of notes he gave to pay 15 per cent. of such claims, the petitioner executed and delivered to the Union Trust Company of Rochester a deed of trust dated October 1, 1924, though not formally executed until June 30, 1925, which covered his home, ten notes of the Menihan Company, each for $2,732.71, which had been given him on account of his payment of debts of the corporation out of his own funds, the voting trust certificate for the stock he had transferred to the creditors' committee, and a one-half interest in the bonus he might receive under his employment contract as manager of the corporation. Upon his payment of the notes, the property so placed in trust was to be returned to him.

The petitioner paid $12,877.36 in 1925 on account of the agreement to pay the 15 per cent. to discharge his liability as indorser or guarantor for the corporation. He claimed this amount as a deductible loss for that year, and the Commissioner allowed it. In 1926 he paid $16,469.34, and in 1927 $68,645.09, for a like purpose, and claimed a deductible loss in each year of the amount so paid. The Commissioner disallowed both of these deductions on the ground that the payments were capital contributions rather than losses. The decision of the Board of Tax Appeals sustaining the disallowance of the deductions is here for review.

In 1927 the Menihan Company itself had outstanding notes and bonds which it had given its creditors under the 50 per cent. compromise agreement which required $68,769.96 for their redemption. The petitioner in that year advanced $78,769.96 to the corporation which was used to retire the bonds and notes and to give him a credit of $10,000. He treated this advance as a capital expenditure for which he claimed no deduction. By such advance and the payment of his obligation to the extent of 15 per cent. of the corporation's debts, he succeeded in having the compromise settlement with creditors fully carried out and regained his former control of the corporation. His stock was returned to him by the creditors' committee on April 28, 1927, in accordance with the terms of the voting trust agreement. Thereafter the corporation was reorganized.

The deductions are claimed under section 214 of the Revenue Act of 1926, c. 27, 44 Stat. 9 (26 USCA § 955). They are in all respects, except in amount, the same as the deduction allowed in 1925 The Commissioner declined to follow his former ruling.

Since payment by the petitioner created no debt against the corporation in view of his agreement that it should not, subdivision (a) (7) of the above section (Revenue Act 1926, § 214 (a) (7), 26 USCA § 955 (a) (7), relating to debts ascertained to be worthless and charged off during the taxable period is inapplicable for that reason alone. No one owed him any debt, because of his payments, which he could ascertain to be worthless and charge off. The inquiry comes down to whether or not the payments were deductible losses sustained either in his trade or business (subdivision (a) (4) of section 214, 26 USCA § 955 (a) (4), or in a transaction entered into for profit though not connected with trade or business (subdivision (a) (5) of section 214, 26 USCA § 955 (a) (5). Although the petitioner owned or controlled all of the stock of the Menihan Company, any loss which was incurred in its trade or business was that of the corporation. It was a separate and distinct entity doing business for itself and not as the petitioner's agent. Whatever losses were incurred in that business were deductible, if at all, only from the income of the corporation itself. See Dalton v. Bowers, 287 U. S. 404, 53 S. Ct. 205, 77 L. Ed. 389. There is no basis appearing in this record for disre-

306

garding the corporate structure. The fact that petitioner owned or controlled all of the corporation's stock is alone insufficient ground for that. American Union Line v. Oriental Nav. Corp., 239 N. Y. 207, 146 N. E. 338. Indeed, the petitioner insists that the usual distinction between corporation and stockholder should be preserved here, and with that we are in entire agreement.

■ The gist of the petitioner's case is that, because the petitioner had previously indorsed the corporation's notes and guaranteed its obligations, he had incurred a liability which he made definitely his own individual debt to the extent of 15 per cent. of such obligations of the corporation when he made the adjustment for the settlement of his liability to its creditors upon that basis, and that, as his payments gave him no right to recourse against the corporation, he lost the amounts so paid when he paid them. As the returns filed by the petitioner for the years in question were on the cash receipts and disbursements basis, he may take deductible losses in the taxable period when they are paid in cash. Eckert v. Burnet, 283 U. S. 140, 51 S. Ct. 373, 75 L. Ed. 911.

■ The adjustment, however, which is now said to have made his own the obligations he discharged for cash in 1926 and 1927, was but a part of the entire arrangement which saved both the corporation and the petitioner from bankruptcy. Creditors of the corporation had the security of the deed of trust he gave for the performance of his promise. That deed of trust covered all his stock in the corporation. Without the adjustment, his stock was worthless. His agreement saved that stock, and, though we are not informed as to just how valuable it became, in 1926 and 1927 its value greatly exceeded what the petitioner paid the corporation's creditors to secure its return to him.

When he indorsed the corporation's paper and guaranteed its debts, he was not in the indorsement or guaranty business, but clearly did that to protect his own previous investment. See Burnet v. Clark, 287 U. S. 410, 53 S. Ct. 207, 77 L. Ed. 397. When he discharged the liability, whether it had become his alone to the extent he paid or remained secondary to that of the corporation, he was but performing his part of the compromise agreement which preserved the value of his investment. Whether he will ever sustain any loss as a result depends upon the value of that stock when events take place which close the transaction for taxation purposes. De Loss v. Commissioner (C. C. A.) 28 F.(2d) 803. Until then the petitioner has but added to his investment in the corporate stock. Nothing took place during 1926 or 1927 to make it possible to determine that the payments he made in those years were losses. They are, on this record, in the same category with the additional capital contribution of $78,769.96 which he made to help rehabilitate the corporation, and were capital investments still at risk during the taxable years in which the deductions are claimed.

Affirmed.