MERCER TUBE & MANUFACTURING COMPANY, a Delaware Corporation, Appellant, Respondent, v. AMERICAN ZINC SALES COMPANY, a Maine Corporation, Respondent, Appellant.

First Department, January 26, 1940.

*Henry H. Salzberg* of counsel [*Benjamin Beskin* and *Milton A. Horowitz* with him on the brief; *Henry H. Salzberg*, attorney], for the plaintiff.

*Burt D. Whedon* of counsel [*Wing, Lakin & Whedon,* attorneys], for the defendant.

DORE, J.   There were three written contracts between plaintiff, at the time in the hands of a receiver, and defendant: (1) The contract of December 21, 1936, for 500 tons of zinc at $5.55 per cwt., shipment during the second quarter of 1937; (2) the contract of December 30, 1936, for 300 tons of zinc at $5.55 per cwt., shipment of 100 tons in April, May and June, 1937; and (3) the contract of January 8, 1937, for 2,000 tons at $5.80 per cwt., shipment of 500 tons per month during July, August, September and October, 1937. Plaintiff sued for breach of the first two contracts.   Defendant counterclaimed for repudiation under the first two contracts and for failure to accept the balance under the third.

It is conceded there were modifications with regard to the time of the shipments under the December contracts; deliveries thereunder were postponed from time to time by agreement of the parties and up to July 12, 1937, but fifty tons of zinc had been delivered.

The trial justice, who saw and heard the witnesses, stated that he believed the testimony of defendant's witness Dodd as against that of plaintiff's witness Greenberg.   This conclusion as to credibility should not be disturbed.   It follows that the shipments under the December contracts were deferred at plaintiff's request for delay in delivery; and that the arrangements indicated by defendant's letter of April 19, 1937, were superseded by the arrangement, outlined in the testimony of Dodd relating to the conversation held by him with Greenberg on June 25, 1937, and evidenced by the letter dated that day signed by plaintiff and accepted in writing by defendant, under the terms of which the parties expressly agreed " that handling of further quantities of all three contracts will be discussed the latter half of next month." Plaintiff, therefore, had no right to insist on delivery of 1,650 tons in August under the contracts as modified with respect to the quantities deliverable under the three contracts.   It might have been entitled to have defendant prorate the tonnage deliverable each month between the December contracts and the January contract.   Plaintiff did not request prorated installment deliveries under each contract but lumped the total tonnage and demanded deliveries against such total.   Defendant was under no obligation to deliver 1,650 tons in August as demanded.   The third contract called for delivery of 500 tons in August.   The times fixed in the other two contracts had passed; deliveries thereunder had been postponed by mutual agreement; and the December contracts under which deliveries were postponed were by their terms and still remained installment contracts.

When plaintiff before the time agreed upon in the letter of June 25, 1937, and without any discussion as required by the agreement evidenced by that letter, arbitrarily on July 12, 1937, demanded the entire balances under the December contracts and installments under the January contract, requiring delivery of 1,650 tons in the month of August alone, plaintiff's demand was unwarranted and unreasonable, and the trial court properly found that plaintiff breached the December contracts and should not recover thereon.

But before defendant could hold plaintiff for its breach under the December contracts, defendant should have tendered some deliveries thereunder. As no time was then fixed for delivery, defendant was bound to deliver the tonnage under those contracts within a reasonable time. (Pers. Prop. Law, § 124; *Mutual Chemical Co.* v. *Marden, Orth & Hastings Co.*, 235 N. Y. 145, 150.) The record establishes that defendant made no offer or attempt to complete any deliveries under the December contracts until it had completed or offered to complete deliveries under the January contract. Defendant, therefore, failed to make deliveries under the December contracts within a reasonable time and the trial court was correct in holding that defendant's counterclaims in respect to those contracts should not be sustained.

Neither party, therefore, tendered performance of the December contracts, as modified, with respect to installment deliveries, and neither may recover damages for breaches thereof.

Plaintiff did not sue under the January contract but accepted and paid in full for 1,850 out of 2,000 tons delivered thereunder at the price called for therein. Defendant, in so far as it was possible, performed the January contract, making deliveries in a reasonable time, all of which were accepted and paid for by plaintiff; and defendant offered delivery of the balance under the January contract. Plaintiff is accordingly answerable to defendant for its refusal to accept the balance of 150 tons under the January contract and defendant is entitled to recover the damages under the third counterclaim based upon that contract. It was stipulated at the trial that the damages under this third counterclaim amounted to $2,400 with interest, which defendant is entitled to recover.

The order permitting defendant to amend its answer was in effect an order granting defendant leave to amend so as to conform the pleading to the proof which had been submitted at the trial without objection from either party, and in view of the facts disclosed in the record the order was proper and should be affirmed, with twenty dollars costs and disbursements to the defendant.

The judgment appealed from should be modified by granting defendant judgment on its third counterclaim for $2,400 with interest, and as so modified affirmed, with costs to the defendant.

MARTIN, P. J., and CALLAHAN, J., concur; GLENNON and COHN, JJ., dissent.

GLENNON, J. (dissenting). Plaintiff is in the business of manufacturing steel pipe and the defendant in the sale of slab zinc. The business of plaintiff was conducted by Henry Greenberg and Donald V. Sawhill as equity receivers from July 22, 1936, until August 3, 1937. At the termination of the receivership, Greenberg became the president of the plaintiff corporation and Sawhill its treasurer.

Plaintiff instituted this action for the breach by the defendant of two contracts. The first, dated December 21, 1936, provided that the defendant was to sell and to deliver to the plaintiff 500 tons of prime western spelter during the second quarter of 1937, at a price of $5.55 per 100 pounds, f. o. b. East St. Louis, Ill. The second contract, dated December 30, 1936, provided that defendant was to sell an additional 300 tons of spelter, deliveries to be made in lots of 100 tons each during April, May and June, 1937, under the same terms and conditions as the first contract. Only fifty tons of spelter were delivered by the defendant and as a result thereof the plaintiff instituted this action for damages upon two causes of action, each based upon a separate contract.

Plaintiff and defendant entered into a third contact under date of January 8, 1937, providing for the sale by the defendant of 2,000 tons of the same commodity at the price of $5.80 per 100 pounds. Deliveries under this contract were to be made in lots of 500 tons in July, August, September and October of the same year.

Defendant interposed three counterclaims. In the first it claimed that plaintiff had repudiated the first contract by refusing to accept delivery of 450 tons on December 2, 1937. The second counterclaim was based upon the refusal of the plaintiff to accept 300 tons on the same date, and the last was based upon the failure of the plaintiff to accept delivery in full on the third contract between the parties. Plaintiff, in its reply to the counterclaims, in effect contended that it was not guilty of a breach of any of the three contracts.

The case was tried before the court without a jury. Findings of fact and conclusions of law were waived. After both sides had rested, the court said, " I am inclined to believe I will have to render judgment here in favor of the plaintiff." Immediately there-

after a discussion ensued wherein the court's attention was directed by counsel for the defendant to a certain letter bearing date June 25, 1937, whereupon the court, addressing counsel for the plaintiff, said, " Apart from this letter I would be entirely disposed to grant you judgment, but this letter puts a little different aspect on it." After a further conference off the record, decision was reserved and counsel were instructed to submit briefs five days later.

The trial was concluded on March 24, 1939. The defendant obtained and served on March twenty-seventh an order to show cause for permission to amend its answer. The motion which was returnable at Special Term was referred to the justice who presided at the trial. Subsequently, on April 11, 1939, an order was entered which recites in part as follows: " Ordered, that said motion be and the same hereby is granted and that the defendant have leave to amend its answer so as to conform the same to the proofs in the following particulars."

In the meanwhile, on March 31, 1939, the court handed down an opinion wherein he stated, in effect, that neither side should be permitted to have a recovery. The final judgment was entered on April 14, 1939. The plaintiff has appealed from the judgment as entered and also from the order which granted permission to the defendant to amend its pleading. The defendant has appealed from the final judgment in so far as its counterclaims were dismissed.

I am of the opinion that the court should have found in favor of plaintiff upon the two causes of action and should have denied the defendant's motion to amend its pleading after the conclusion of the trial. Furthermore, I am inclined to the view that defendant should have been permitted to recover upon its third counterclaim which involved the third contract in suit.

At the outset it should be noted that spelter is zinc, so that in the use of either of these words it should be understood that we are referring to the same metal.

Fifty tons of zinc under the first contract were shipped to the plaintiff on April 9, 1937, pursuant to instructions, and accordingly payment was made at the rate provided for in that contract. Under the two December contracts, covering in all 800 tons, deliveries were to be made during the months of April, May and June. On July 1, 1937, 750 tons had not been delivered. There is no contention made on the part of the defendant that plaintiff had breached either of these two contracts on the last-mentioned date. Concededly, on April nineteenth, Greenberg and Alfred W. Dodd, the assistant treasurer and eastern sales manager of the defendant, met in New York city. As a result, it was agreed between the parties that further deliveries of the zinc under the contracts of

December twenty-first and December thirtieth were to be deferred until the end of May, 1937, and thereafter the zinc was to be shipped upon two weeks' notice from the plaintiff. At the time the conference was held in April, the price of zinc had advanced to approximately $7 per 100 pounds, whereas the contract price covering these shipments was $5.55.

Greenberg quoted Dodd as saying that the defendant was very short of zinc and, therefore, made the request for the postponement of deliveries, whereas Dodd testified that Greenberg asked that shipments be deferred since plaintiff had some stock on hand. The testimony of Greenberg in this regard seems more credible since in his letter under date of April 19, 1937, Dodd said:

" Agreeable to arrangements with Mr. Greenberg at this office this afternoon, we are lodging instructions to defer further shipments to you until the end of May.

" As explained we would appreciate about two weeks' notice before you require resumption, and will hold further shipping orders in abeyance pending discussion the latter part of next month.

" With an expression of appreciation for your courtesy, believe us."

The concluding sentence of the letter indicates quite conclusively wherein the truth lies in this respect.

Between April nineteenth and June twenty-fifth plaintiff did not demand any zinc nor did defendant request that any be taken. On the latter date another conference was held between Greenberg and Dodd. While there is a difference in the testimony of these witnesses as to the circumstances under which this meeting was held, concededly Greenberg and Dodd signed the following letter which was addressed to the defendant:

" Please take our specifications against contract NY–7152 for shipment of 50 tons weekly during July.

" It is understood that handling of further quantities of all three contracts will be discussed the latter half of next month."

The second sentence of this letter was written because Dodd was about to go upon a vacation and did not expect to return until the latter half of July. He testified, however, that the defendant owed plaintiff 750 tons of zinc on July 1, 1937. It will be remembered that it was this letter to which the court referred in the discussion between counsel after both sides had rested upon the trial of the case. Under the terms of the third contract, if nothing else had happened, defendant would have been obligated to deliver 500 tons of zinc during the month of July, 500 tons in August, 500 tons in September and 500 tons in October, 1937.

Greenberg testified in substance that at the conference of June twenty-fifth he informed Dodd that he and his associate had in mind selling the zinc which defendant had contracted to deliver since the price was very high and he thought that the market might go down. He asserted that Dodd told him that before doing so he should communicate with Mr. Young, the president of the defendant company. While Dodd had no recollection as to this phase of the conversation, nevertheless, the fact remains that Greenberg telephoned to the president of the defendant company and offered to resell the zinc at a price of ten points under the market, or $6.65 per 100 pounds. The next day the defendant, through its president, sent the following telegram to Greenberg: "Tried to get you today to give you answer on your inquiry of yesterday stop account delivery being over four months of rather doubtful market best offer we can make is six and a quarter for your remaining tonnage subject to acceptance by twelve noon Thursday the eighth."

It will be noted that the offer therein made was $6.25 "for your remaining tonnage subject to acceptance" by July eighth. Had plaintiff accepted the figure which defendant placed upon the tonnage, a considerable profit would have accrued to plaintiff and that would have ended the matter there. However, plaintiff did not accept defendant's offer and on July twelfth sold all of the metal undelivered under the three contracts to Superior Zinc Corporation of Philadelphia, Pa. Shipping instructions were given. Delivery of the 750 tons due under the first two contracts and a 400-ton balance of the July shipment pursuant to the terms of the third contract and the additional 500 tons to cover the month of August due under the same contract was demanded in installments during the month of August, 1937. Thereafter, on July nineteenth, Dodd wrote a letter on behalf of defendant to the effect that the latter, beginning August 1, 1937, would undertake to ship a maximum of 500 tons a month during the five months remaining in the calendar year. Furthermore, the defendant insisted that these shipments would be made under the third contract which provided a higher price than the first two.

From July 12 to the end of October, 1937, defendant delivered 1,850 tons on account of the January contract but refused to deliver any tonnage which was covered in the December agreements although Greenberg kept insisting upon the delivery of the 750 tons.

Unless we consider the letter of July nineteenth, wherein it will be noted that Dodd said he would make deliveries at the rate of 500 tons per month, no offer to deliver the zinc due under the earlier agreements was made until December 2, 1937, when the market had

fallen considerably below the price fixed in the original contracts. There was no claim advanced in any of the letters which passed between the parties during the period of time covered by the contracts that the plaintiff had breached any of the agreements. No offer was made by the defendant to carry out its obligations under the first two contracts during the summer or early fall, although there was a balance of 750 tons concededly due to the plaintiff. Even as late as August sixteenth, Greenberg, who in the meanwhile had become president of the plaintiff company, wrote to defendant demanding shipment of the metal against the December contracts, but the defendant refused to do so and continued to bill the zinc under the terms more favorable to it which were contained in the January contract.

The difficulty undoubtedly was due to the fact that defendant either could not or would not deliver the zinc since the market price was very high and the volume of the metal which might be had was very low. Whether or not defendant had more favorable contracts with other customers we cannot tell. In any event, if there was a shortage in the supply, that would be no excuse for the defendant's default on the two December contracts. (*Canadian I. A. Co.* v. *Dunbar M. Co.*, 258 N. Y. 194.)

The refusal to make delivery under the contracts of December 21 and December 30, 1936, until after the contract of January 8, 1937, had been completed resulted in a breach of each of these two contracts which immediately gave rise to two causes of action in favor of the plaintiff. (*Blumenthal & Co.* v. *Gallert & Co.*, 240 N. Y. 217.)

These three contracts were separate and distinct and were so regarded by the parties. The following statement in the letter of June 25, 1937, " It is understood that handling of further quantities of all three contracts will be discussed the latter half of next month," did not have the effect of tying these contracts together, as is contended by the defendant. (*Lace Selling Co.* v. *Shapiro*, 249 N. Y. 68.) The opening sentence of this same letter: " Please take our specifications against contract NY–7152 for shipment of 50 tons weekly during July," indicated that both these parties were referring to the first of the December contracts. No reference was made therein specifically to the installment of 500 tons which was due under the January contract. Thus, when Dodd, in his letter of July nineteenth, refused to make the deliveries under the terms of the first December contract, the position he took, to say the least, was entirely different from that to which he had agreed in the letter of June twenty-fifth.

The position taken by the defendant in July was analogous to that of the seller in *Tyers* v. *Rosedale and Ferryhill Iron Co., Ltd.* (10 Ex. 195), wherein Lord Chief Justice Cockburn said in part: " There was a contract to purchase 2000 tons of iron to be delivered in monthly instalments. It did not suit the purchasers to take the iron in the instalments originally contemplated by the parties, and they proposed to the sellers to postpone from time to time the delivery of the monthly instalments. Now it would have been perfectly competent to the defendants to say, ' We will not acquiesce in that proposal of yours. You are bound to take the iron month by month, and you must so take it, or consider the contract at an end.' Instead of doing that the defendants, as I read the letters, acquiesced, not in holding the contract at an end, but in postponing the period of delivery. The iron was to be delivered in the course of the year 1871, and there was, by reason of this postponement, a very considerable arrear at the end of this year. Then the plaintiffs call on the defendants to deliver at once the whole of what remained undelivered. I think that this was a demand which they were not entitled to make. I think that the postponement had the effect of carrying the period of delivery over the year 1872, but that the defendants could not be called upon to deliver 1000 tons of iron at one time, but only in such quantities as was originally provided for. Therefore the defendants might have said, ' We shall not deliver the whole that remains in one mass, but we will deliver it according to the terms of the contract.' But they did not say this. What they said was, ' We will not deliver you anything at all.' There I think they were wrong. Consequently, there was a breach of the contract, for which the defendants are liable in damages."

Since plaintiff demanded deliveries of the zinc provided for in the first two contracts in August and the defendant refused to comply therewith, plaintiff is entitled to recover the difference between the contract price and the fair market value which was conceded upon the trial to amount to $25,500 with interest from August 31, 1937. If what I have said thus far is correct, plaintiff would have been required to accept and pay for the balance due under the contract of January 8, 1937. The damages computed in this respect by counsel upon the trial amounted to $2,400 with interest thereon from December 2, 1937. The difference between these figures would be the amount to which, to my view, plaintiff would be entitled to recover as damages.

Further I believe, as I stated before, that the order entered April 11, 1939, by which the defendant was given leave to amend its answer, should be reversed. It will be remembered that this

motion was granted after both sides had rested. No motion was made at that time for the relief which defendant subsequently sought and obtained.

For the reasons assigned the order appealed from should be reversed and the judgment modified by granting the relief which plaintiff seeks on the first and second causes of action and by affirming the dismissal of the first and second counterclaims. Upon the defendant's appeal the judgment should be reversed in so far as it applies to the third counterclaim and the amount to be entered thereon deducted from plaintiff's award.

COHN, J., concurs.

Judgment modified by granting defendant judgment on its third counterclaim for $2,400 with interest, and as so modified affirmed, with costs to the defendant. Order affirmed, with twenty dollars costs and disbursements to the defendant. Settle order on notice.