C.R. LAMBERT AND CHARLOTTE K. LAMBERT, HUSBAND AND WIFE, APPELLEES, V. CITY OF COLUMBUS, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.

496 N.W.2d 540

Filed March 12, 1993.   No. S-90-657.

Douglas R. Milbourn, of Tessendorf, Milbourn, Fehringer, Stilmock & Peetz, P.C., for appellant.

Clark J. Grant and Thomas M. Maul, of Grant, Rogers, Maul & Grant, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

BOSLAUGH, J.

This case arises out of a dispute concerning a contract entitled "Settlement Agreement" between the plaintiffs, C.R. Lambert and Charlotte K. Lambert, and the defendant, City of Columbus, Nebraska. The contract was entered into because of the Lost Creek Flood Control Project which was to be constructed by the U.S. Army Corps of Engineers pursuant to an agreement with the city.

As a part of the project the city was required to purchase 12.08 acres of land owned by the plaintiffs so that as a part of Phase II of the project a flood control channel could be constructed across the plaintiffs' land. The contract provided that the plaintiffs would convey 12.08 acres of land to the city and the city agreed to pay $25,500 to the plaintiffs. The contract further provided that the city would deliver to the plaintiffs the excess dirt, excavated from the property conveyed to the city by the plaintiffs, amounting to approximately 61,440 cubic yards. The city also agreed to sell to the plaintiff an additional minimum of 25,000 cubic yards of dirt arising out of the construction of the project for $.15 per cubic yard. The plaintiffs agreed to buy such additional dirt as the city might desire to sell to them at the same rate.

The plans of the Corps of Engineers for the project projected that construction of phase II of the project would produce approximately 336,130 cubic yards of excess dirt. The defendant was obligated under the agreement with the Corps of Engineers to find a place for the disposal of this dirt. There was no provision in the contract excusing the defendant's performance in the event the construction of the project failed to yield the excess dirt that was anticipated.

As construction of the project proceeded there was some deviation from the original plans in that the bottom of the flood channel was raised and excess dirt was deposited on the sides of the channel so as to create a berm on each side of the channel. Although a substantial quantity of dirt was delivered to the plaintiffs, the total amount of dirt delivered was substantially

less than the collective 86,440 cubic yards provided in the contract.

On June 12, 1986, Merlin Lindahl, the defendant's City Engineer, sent a letter to the plaintiffs which stated:

> I contacted Don Adams of the Army Corps of Engineers and according to his calculations and load count there is 61,300 C.Y. of dirt in the disposal area along 48th Avenue.
>
> The contractor has stated that he will haul a minimum of 1,000 more cubic yards into this disposal area.
>
> The contract between the City and you states that approximately 61,400 C.Y. of excess dirt will be placed on your land. Based on the above statements, it appears the Contract will be satisfied.
>
> If you have any questions, please contact me.

This action was commenced to recover damages for the defendant's failure to deliver the amount of dirt provided in the contract. The amended petition filed May 12, 1989, alleged that the plaintiff had been damaged in the amount of $247,979.

The defendant's third amended answer alleged that performance of the contract was made impossible by the failure of the project to create the excess dirt originally contemplated and that the city had notified the plaintiffs that all of the dirt provided in the contract would not be delivered. The defendant contends that since, through no fault of its own, the Corps of Engineers used substantially more of the excavated dirt in constructing the project than was originally contemplated, and less excess dirt was produced, the defendant was excused from performance under the contract as provided in Neb. U.C.C. § 2-615 (Reissue 1992).

At the close of all the evidence, the trial court directed a verdict for the plaintiffs on the issue of liability. The case was then submitted to the jury on the issue of damages. The jury returned a verdict for the plaintiffs in the amount of $144,613. The defendant has appealed to this court.

The defendant's assignments of error all relate to the trial court's direction of a verdict on the issue of liability in favor of the plaintiffs.

With respect to the defendant's claim that its performance

under the contract was excused by the failure of the project to create the excess dirt originally contemplated, Neb. U.C.C. § 2-615 (Reissue 1992) provides in pertinent part:

Except so far as a seller may have assumed a greater obligation and subject to the preceding section on substituted performance:

(a) Delay in delivery or nondelivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made or by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be invalid.

. . . .

(c) The seller must notify the buyer seasonally that there will be delay or nondelivery and, when allocation is required under paragraph (b), of the estimated quota thus made available for the buyer.

In *Barbarossa & Sons, Inc. v. Iten Chevrolet, Inc.*, 265 N.W.2d 655, 658 (Minn. 1978), the Supreme Court of Minnesota held that this section of the U.C.C. contains four requirements which must be established before a seller's performance may be excused:

(1) a contingency has occurred which has made performance impracticable; (2) the nonoccurrence of that contingency was a basic assumption on which the contract was made; (3) the seller has not assumed a greater obligation; and (4) the seller has seasonably notified the buyer that there will be a delay or nondelivery.

The partial failure of a seller's source of supply has generally "been treated as a foreseeable contingency, the risk of which is allocated to the seller absent a specific provision to the contrary in the contract." *Id.* at 659 citing to *Center Garment Co., Inc. v. United Refrigerator Co.*, 341 N.E.2d 669 (Mass. 1976); *Canadian Industrial Alcohol Co. v. Dunbar Molasses Co.*, 258 N.Y. 194, 179 N.E. 383 (1932).

In *Barbarossa, supra,* the defendant contracted with the

plaintiff to deliver a certain model truck. In late June or early July, General Motors canceled the defendant's order for the plaintiff's truck. The defendant did not inform the plaintiff until sometime in August. The Minnesota Supreme Court concluded that since the defendant did not make its obligation to deliver the plaintiff's truck contingent upon General Motors' agreement to manufacture the truck, the defendant had assumed the responsibility of General Motors' possible cancellation of the order. Accordingly, General Motors' cancellation of the order for the truck was not a contingency which excused the defendant's performance under U.C.C. § 2-615.

As to the defendant's claim that it seasonably notified the plaintiffs that it would not deliver the dirt it had promised to deliver, the defendant relies upon the June 12, 1986, letter from its City Engineer to the plaintiffs as notice of nondelivery. We think it is clear from the language of the letter that, as a matter of law, it was not notice of nondelivery. Thus, there was no issue as to the failure of notice of nondelivery as required by the statute.

A directed verdict is proper when reasonable minds cannot differ and can only draw one conclusion from the evidence. *Stoco, Inc. v. Madison's, Inc.*, 235 Neb. 305, 454 N.W.2d 692 (1990). A trial court should only direct a verdict as a matter of law when the facts are conceded or undisputed. *Youngs v. Potter*, 237 Neb. 583, 467 N.W.2d 49 (1991).

In the present case, it is undisputed that the contract between the plaintiff and defendant did not provide that the defendant would be excused from performance if the supply of dirt was diminished and the record shows that the plaintiffs did not receive all of the dirt that was provided in the contract.

It is clear from the record that only one conclusion could be drawn from the evidence, and the trial court was correct in directing a verdict for the plaintiff on the issue of liability.

The judgment is affirmed.

AFFIRMED.