MAX GROSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74187. Promulgated October 27, 1937.

*S. M. Reiss, Esq.*, for the petitioner.
*Lloyd W. Creason, Esq.*, for the respondent.

OPINION.

TYSON: An income tax deficiency of $556.89 for the year 1930 is under review in this proceeding. The issue is whether or not the petitioner sustained a deductible loss in that year through the alleged purchase and sale of 50 shares of bank stock made by a business associate on petitioner's behalf.

The petitioner is a resident of New York City, and owned 50 percent of the capital stock and was a director of the Carmen Dress Co., a corporation, which was engaged in the manufacture of ladies dresses. The other 50 percent of the corporation's stock was owned by Abe B. Levy, who was also its president. During 1929 Levy purchased some 300 shares of stock of the Bank of the United States at prices ranging from 208¾ to 239 dollars per share. These purchases were made personally by Levy, carried in his own name, and pledged as collateral to secure his private loans with the Irving

Trust Co. At some time during this year, following said purchases, Levy told the petitioner about the purchase of 100 of said shares at $238.50 per share and he advised petitioner that he, Levy, "had taken fifty of such shares" and would carry them for petitioner, stating that he thought they would make some money out of it, and petitioner told him it was all right. After these purchases the price of the bank stock began falling on the market and, on February 17, 1930, Levy sought to hedge against loss by purchasing 100 additional shares of the stock, paying $82 per share. Later, Levy told petitioner of this last purchase explaining that he had made it in order that they might make up their loss already sustained by the fall in prices of the stock. He also told petitioner that the latter could have the benefit of such gains, if any, as might be realized from 50 shares of the last purchase, to the extent of his loss on the 50 shares first purchased for him, but*would not be held liable for any loss on account of the last purchase of 50 shares.

After these two purchases of stock were made and on April 30, 1930, petitioner and Levy entered into a written agreement, as follows:

AGREEMENT made this 30th day of April, 1930, between ABE LEVY, of the County of Nassau, State of New York, and MAX GROSS, of the Borough of Manhattan, City, County and State of New York.

WITNESSETH:

WHEREAS, Levy purchased Fifty (50) shares of stock of the Bank of the United States for Gross, and

WHEREAS, said Levy is holding said stock, although in his name, for the account of Gross, and

WHEREAS, Gross agrees that in the event of any loss from such purchase that he will reimburse Levy for such loss, and

WHEREAS, it is understood that said stock cost Levy $238.50 per share and

WHEREAS, Levy has made an additional purchase of stock of the Bank of the United States for which he paid at the rate of $82.00 per share, and

WHEREAS, Levy is willing to give Gross the benefit of such purchase in order to minimize, if possible, the loss which said Gross may have to take;

Now, THEREFORE, in consideration of the mutual agreements herein contained, and in further consideration of the sum of One ($1.00) Dollar, lawful money of the United States of America by each of the parties hereto in hand paid, receipt whereof is hereby acknowledged, it is agreed as follows:

*First:* That Levy will hold said stock for at least one (1) year from the date hereof, unless requested by the said Gross to sell said stock sooner.

*Second:* It is understood that when said stock is sold, the loss, if any, is to be determined by deducting the sale price from the purchase price of $238.50 and also crediting said Gross with the difference between the market value of Fifty (50) shares of stock and the price of $82.00.

*Third:* It is further understood and agreed, however, that Gross is not to be charged with any loss on the additional stock purchased by Levy, and that Gross is only to be charged with a loss, if any, on the original purchase of Fifty (50) shares at $238.50 per share.

*Fourth:* When the loss, if any, is determined Gross is to make settlement of the amount with Levy.

*Fifth:* Should Gross desire, at any time before the expiration of one (1) year, to close out the said Fifty (50) shares of stock, Levy agrees to sell when directed by him to do so, in which event Gross will make good any loss, or, on the other hand, if the stock shall appreciate in value in excess of the purchase price, the profit is to be paid to Gross.

IN WITNESS WHEREOF the parties hereto have hereunto set their hands and seals the day and year first above written.

MAX GROSS (L S)

A. B. LEVY (L S)

During 1930 the market price of the Bank of the United States stock continued to drop, and it was current rumor in about December of that year that the institution was bankrupt. The petitioner and Levy had several conversations during the latter part of 1930 on the subject of selling the stock. With the approval of petitioner, Levy sold, on December 6, 1930, to his brother, Louis Levy, 200 shares of the bank stock, including the 100 shares in which petitioner was interested, for the cash price of $1 per share. Five days later, on December 11, the bank closed its doors.

Levy reported the sale of these shares to the petitioner and the two came to an agreement as to the portion of the loss each should bear. To cover petitioner's agreed part of the loss he executed and delivered to Levy several promissory notes, but on what date, or dates, does not clearly appear in the record. Petitioner made no cash payments to Levy on account of his loss during the taxable year, but beginning December 1, 1931, and from time to time thereafter up until April 1, 1933, he made payments to Levy aggregating $3,249.64, which the latter credited upon the notes.

The petitioner files his income tax return upon the cash receipts and disbursements basis. Respecting his income tax obligation for 1930, the petitioner claims that he sustained a loss of $11,925 on account of the stock transactions carried out by Levy, on petitioner's behalf, under the circumstances hereinabove detailed, and that he should be allowed to deduct such loss from his gross income for said year. On brief the respondent challenges the alleged ownership by the petitioner of the stock involved as well as the bona fides of the sale to Levy's brother made a few days before the bank closed its doors. He also contends that, in no event did the petitioner suffer a deductible loss in 1930, because, being on a cash basis, he parted with no money or property in that year on account of the transaction.

The view we take of the matter as here presented renders unnecessary a consideration of either the bona fides issue raised by respondent as to the sale of the stock to his brother by Abe B. Levy or of the nature of the interest of petitioner in such stock, since we are of the opinion that respondent's determination should be sustained because the facts show that petitioner made his return for the

taxable year on a cash receipts and disbursements basis and they further clearly show that petitioner did not in that year part with any money or property as a result of the loss which he here claims as an allowable deduction. A taxpayer reporting on a cash receipts and disbursement basis can be allowed only such loss deductions as represent actual outlays of cash or property in the taxable year and the claimed deduction here is not of that character. *Eckert* v. *Burnet*, 283 U. S. 140; *A. F. Osterloh*, 13 B. T. A. 713; aff'd., 37 Fed. (2d) 277; *Morris Sass*, 17 B. T. A. 261; *James Klein Bowen*, 27 B. T. A. 824; *Edmond A. Hughes*, 27 B. T. A. 1022; *Frank Kuhn*, 34 B. T. A. 274.

Petitioner relies upon *A. W. D. Weis*, 13 B. T. A. 1284, but, as was said in *Frank Kuhn*, 34 B. T. A. 274, 276, which is equally as applicable here, "that case stands for an entirely different principle, namely, that a taxpayer whose investment is lost in the taxable year is not to be deprived of the deduction therefor merely because the lost investment was derived from borrowed capital. The distinction between that case and *Eckert* v. *Burnet*, *supra*, appears in *Burns Manufacturing Co.* v. *Commissioner*, 59 Fed. (2d) 504, in which it is also said that the *Weis* case must be regarded, in so far as it considers the cash basis, as overruled by the *Eckert* case."

The respondent's determination is approved.

*Decision will be entered for respondent.*