### JENKINS et al. v. BITGOOD.
#### No. 105.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1939.

Curtiss K. Thompson and John H. Weir, both of New Haven, Conn., for appellants.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a judgment for the defendant in an action brought by the executors of Leonard A. Jenkins, deceased, to recover money alleged to have been wrongfully exacted by the defendant collector of internal revenue as income taxes for the year 1932. It presents the question whether the taxpayer, now deceased, was entitled to a deduction of $19,450 from his 1932 gross income as a loss sustained on an investment in bank stock which

became worthless during that year. The case was tried to the court without a jury. Upon special findings of fact the trial judge concluded as matter of law that the plaintiffs were entitled to take nothing by their action.

There is no dispute in the facts as specially found. Leonard A. Jenkins was a director of The Merchants National Bank of New Haven and the owner of 69 shares of its capital stock. In 1931 an examination of said bank by a federal bank examiner disclosed that certain bonds owned by the bank had so depreciated in value that its capital was impaired. To make up such deficiency so that the bank would be permitted to remain open, its directors agreed among themselves to purchase said depreciated bonds at their cost price to the bank, which was substantially in excess of their then market value. Jenkins was a party to this agreement and became obligated thereunder to pay $25,000 to the bank for bonds having a market value of only $5,550 on the date of their delivery to him. On September 21, 1931 he gave the bank his demand promissory note for $25,000; the bank loaned him that amount, applied the proceeds of the loan to the payment of his obligation under the aforesaid agreement, and delivered the bonds to him. When such note was given he was already indebted to the bank in the sum of $46,000, evidenced by promissory notes and secured by collateral having a market value of $100,250 on September 21, 1931. Said notes contained the usual provision that the security held for them should also constitute security for any other obligations of the maker; hence Jenkins' demand note for $25,000 was also secured by such collateral. In 1932 said note was transferred by the bank to the First National Bank and Trust Company and was used by the latter in the normal course of business. The note was not paid until after Jenkins' death, which occurred in 1934. Jenkins became a party to the transaction involving the purchase of the aforesaid bonds for the purpose of protecting his investment in the stock of The Merchants National Bank. Such stock became worthless in June 1932. In his income tax return for the year 1932 Jenkins claimed a deduction of $19,450, the difference between the amount of said demand note for $25,000 and the market value of the bonds received by him in 1931. His return was made on the basis of cash receipts and disburse-

ments. The commissioner disallowed the claimed deduction, and the resulting deficiency assessment of $9,023.69 was paid by Jenkins' executors on January 25, 1935. Their claim for refund having been rejected, this action followed.

Invoking the principle that in matters of taxation substance should prevail over form (United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180), the petitioners contend, first, that while in form the transaction was a purchase by the taxpayer of bonds for $25,000, in substance it was a purchase of bonds at a price of $5,550, their market value, and a contribution of $19,450 to the capital of the bank for the purpose of protecting the taxpayer's investment in its stock; and, second, that a loss of such additional investment was sustained in 1932 when the stock became worthless. We think the first contention is sound. Similar transactions have been interpreted as additional capital investments by stockholders and directors who have come to the aid of their financially involved corporations. See In re Park's Estate, Park v. Commissioner, 2 Cir., 58 F.2d 965, 966, certiorari denied 287 U.S. 645, 53 S.Ct. 91, 77 L.Ed. 558; Pennsylvania Indemnity Co. v. Commissioner, 3 Cir., 77 F.2d 92, certiorari denied 296 U.S. 588, 56 S.Ct. 99, 80 L.Ed. 416; Menihan v. Commissioner, 2 Cir., 79 F.2d 304, 306, certiorari denied 296 U.S. 651, 56 S.Ct. 368, 80 L.Ed. 463. Indeed, that this is the true interpretation of the transaction at bar is not seriously contested. It is only the second contention of the petitioners that the respondent vigorously disputes.

The taxpayer made his tax return on the basis of cash receipts and disbursements. Granting that the amount of $19,450 should be considered as a contribution to the capital of the bank in addition to the cost of the taxpayer's stock, the problem remains whether in 1932 he sustained a deductible loss thereof inasmuch as his contribution was not made in money but by the giving of the $25,000 note which was not paid until a later year. The relevant statutory provisions are to be found in sections 23(e), 23(g) and 113(b) of the Revenue Act of 1932, 47 Stat. 180, 201, 26 U.S.C.A. §§ 23, 113. See, also, Art. 171 of Treasury Regulations 77.

To permit deduction of a loss incurred in any transaction entered into for profit, the loss must have been sustained during

the taxable year, and it must be an actual and present loss. Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 77 L.Ed. 670. Had the taxpayer in 1931 paid his capital contribution in cash, he would have sustained a loss of it when the stock became worthless in 1932; but the obligation to pay it evidenced by his note (laying aside for the moment the fact that the note was secured by collateral) will not result in an actual loss unless and until the note is paid. See Eckert v. Burnet, 283 U.S. 140, 142, 51 S.Ct. 373, 75 L.Ed. 911; Gross v. Commissioner, 36 B.T.A. 759, 762. In the Eckert Case a taxpayer on the cash basis gave his unsecured note in substitution for his liability as endorser of an insolvent's note; it was held that he sustained no deductible loss until his note was paid. It is true that there the taxpayer sought deduction of the amount of the old note as a worthless debt; while in the present case the claimed deduction is of a loss sustained in a transaction entered into for profit. But we think the principle announced is equally applicable. The basis for determining the amount of deduction for a loss sustained under section 23(e) is the adjusted basis provided in section 113(b). This provides that proper adjustment shall be made "for expenditures, receipts, losses, or other items, properly chargeable to capital account." We do not see how a taxpayer on the cash basis can treat as an "expenditure" the mere incurring of a liability for a capital contribution. Not until the note is paid will he make an "expenditure" that increases the cost of his stock. No precise authority on the point has been found; but an analogy may be seen in Hart v. Commissioner, 1 Cir., 54 F.2d 848, 852. There it was held that a taxpayer keeping books on the cash basis may not deduct, as "interest paid" within the taxable year, the amount of a note given and accepted as payment of interest. See, also, United States v. Mitchell, 271 U.S. 9, 46 S.Ct. 418, 70 L.Ed. 799.

The petitioners argue that the situation should be considered as though the taxpayer had paid his capital contribution with borrowed money. Had he paid the bank with money borrowed from a third party, he would apparently be permitted to deduct the loss in the year when the stock became worthless, even though the borrowed money had not been repaid to the lender. Jarvis v. Heiner, 3 Cir., 39 F.2d 361, 362; Crain v. Commissioner, 8 Cir.,

75 F.2d 962, 964; Humphrey v. Commissioner, 9 Cir., 91 F.2d 155, 161; Weis v. Commissioner, 13 B.T.A. 1284. The two transactions are treated as distinct, and the stock transaction is closed when the stock becomes worthless. But it is not so easy to say that there were two distinct transactions when the capital contribution was paid merely by the giving of the taxpayer's note. The parties did not even go through the form of a loan by the bank and a payment by the taxpayer of the proceeds of the loan, though we do not mean to suggest that such a procedure would necessarily make a difference in the legal result. As already stated, the giving of an unsecured note cannot be deemed an "expenditure" that increased the taxpayer's stock investment, when the taxpayer is on the cash basis. It was rather the substitution of the taxpayer's note for the obligation already existing under the directors' agreement, and falls within the principle of the Eckert Case, supra.

Finally, it is urged that the fact that the note was secured by adequate collateral at the date it was given makes it the equivalent of a cash payment. Where property is sold or exchanged for well-secured notes, the notes must be treated as the equivalent of cash, when the question is whether the recipient of the notes has realized income. Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 468, 53 S.Ct. 257, 77 L.Ed. 428. But it does not necessarily follow that they must be so treated when the taxpayer is the maker of the notes and the question is whether he has made a cash payment or "expenditure" by delivery of them. The deduction of "losses" is a matter of legislative grace; what may be "income" to the one, may not be a deductible payment by the other. The existence of security does not, we think, differentiate the Eckert Case. So it was held in Kuhn v. Commissioner, 34 B.T.A. 274. See, also, Insurance Finance Corp. v. Commissioner, 3 Cir., 84 F.2d 382. There a judgment against the taxpayer, evidencing a loss, was affirmed on appeal in 1932, but was paid in the following year out of proceeds of collateral which had been deposited with the surety on the appeal bond. It was held that since the taxpayer was on the cash basis, the loss was not sustained until the judgment was paid despite the fact that security for its payment had been deposited in 1932. In our

opinion the taxpayer's $25,000 note, though secured, cannot be treated by him as equivalent to a cash payment of his contribution to the bank's capital. None of the cases cited by the petitioners constrains to an opposite view. Washer v. Commissioner, 12 B.T.A. 632, affirmed by this court without opinion in 2 Cir., 35 F.2d 1023, is but an illustration of a loss sustained on a sale of stock purchased with money borrowed from the broker; the loss occurred when the stock was sold rather than when the broker was repaid.

Judgment affirmed.