T.C. Memo. 1997-289

UNITED STATES TAX COURT

J. BRENT HAYMOND AND JANIS S. HAYMOND, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13024-95.                    Filed June 26, 1997.

<u>Earl D. Tanner, Jr.</u>, for petitioners.

<u>David W. Sorensen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

TANNENWALD, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax in the amount of $92,790.92 and a

penalty under section 6662[1] in the amount of $18,558.00 for the taxable year 1990. The issues for decision are as follows:

(1) Whether petitioners are entitled to include an unpaid commission in the basis of stock sold by petitioner J. Brent Haymond's wholly owned S corporation;

(2) whether petitioners are liable for the accuracy-related penalty under section 6662; and

(3) whether petitioner Janis S. Haymond should be relieved of liability for tax as an innocent spouse pursuant to section 6013(e).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, filed a joint Federal income tax return for 1990. They resided in Springville, Utah, at the time they filed their petition.

Petitioner J. Brent Haymond (Mr. Haymond) earned an undergraduate degree in chemistry and a master's degree in business administration. He has extensive job experience in marketing computer technology and in managing information systems and computer companies in an executive capacity. At some point,

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Mr. Haymond left the data processing field and began to devote his business efforts to power production. Petitioner Janis S. Haymond (Mrs. Haymond) has spent most of her life raising 10 children. Her formal education beyond high school consisted of some college courses on the subjects of early childhood and psychology taken periodically. She was not involved in her husband's business activities, except as described below.

InTex Fuels and Chemicals Corporation (InTex) was an S corporation during the taxable year 1990. Mr. Haymond owned 100 percent of the stock of InTex and served as its president. The board of directors of InTex consisted of petitioners and Joseph Winther; these individuals were also InTex's officers. Mrs. Haymond's role as a director and an officer was to sign documents as needed; she did not participate in the operations of InTex or in its decision making.

InTex entered into a joint venture with Bonneville Pacific with respect to the Lehi Co-Generation Plant project (the project). InTex owned 49 percent of the project and Bonneville Pacific owned 51 percent. As a result of disagreement between Mr. Haymond and Bonneville Pacific, sometime in 1989, InTex transferred its interest in the project to Bonneville Pacific in exchange for Bonneville Pacific stock (the stock). Bonneville Pacific also agreed to redeem the stock in 1990 at a set price that exceeded the value of the stock at the time of the exchange.

On March 8, 1990, InTex sold the stock back to Bonneville Pacific for $1,299,993.

In 1989, pursuant to a resolution of its board of directors, InTex agreed to pay Mr. Haymond a commission of $330,000 for his part in arranging the transfer of InTex's interest to Bonneville Pacific.  InTex did not pay the commission in 1989, in 1990, or in any subsequent year up through the time of trial.

Mrs. Haymond knew that InTex had sold its interest in the project but did not know any of the financial aspects of the transfer of InTex's interest in the project or that InTex sold the Bonneville Pacific stock in 1990.  She did not read the resolution when signing it; it was one of many documents she signed that day.  Mrs. Haymond was not aware that Mr. Haymond was to receive the commission.

Petitioners employed J. Niel Strong (Mr. Strong), a certified public accountant (C.P.A.), to complete both their personal Federal income tax returns and those of InTex.  Mr. Strong has had his C.P.A. license since 1973.  He has been petitioners' accountant for approximately 10 years.  About 33 to 40 percent of Mr. Strong's practice consists of preparing tax returns.

The financial records of InTex consisted of a check register containing copies of the checks, deposit slips, and bank statements.  These records were kept by Mr. Haymond until he

brought them to Mr. Strong to prepare the tax returns. Mrs. Haymond did not have possession of InTex's financial records, nor did she review them.

In preparing the tax returns for the taxable year 1990, Mr. Haymond and Mr. Strong discussed the sale of the stock. Mr. Strong requested all documentation related to the stock. Mr. Haymond provided Mr. Strong with a copy of the resolution, among other items. Mr. Strong knew that the commission had not been paid.

Mr. Haymond did not instruct Mr. Strong as to the treatment of the commission. Mr. Strong "assumed that it was additional basis because it was a commission paid [sic] on the--on the stock, on the sale [sic] of the stock." He had understood from reading the resolution that Mr. Haymond was "entitled to" a commission, and he assumed the commission would be paid in the near future. From InTex's books, Mr. Strong believed InTex was a going concern and would have the cash to pay the commission. He analogized the commission owed to a note given for borrowed funds to purchase property. Based on this reasoning, Mr. Strong included the commission in the basis of the stock.

Once Mr. Strong had prepared both InTex's and petitioners' returns, Mr. Haymond and Mr. Strong met to review those returns; Mrs. Haymond was not present. They discussed each item on InTex's Schedule D, including the amount shown as the basis of

the stock. Mr. Strong did disclose to Mr. Haymond that he had included the commission in the basis. Mr. Haymond's questions regarding the commission concerned whether petitioners owed tax on the commission itself since he had not received it.

Mr. Haymond did not object to Mr. Strong's method of reporting the stock transaction, and the returns were filed as prepared by Mr. Strong. Mr. Haymond did not show InTex's tax return to Mrs. Haymond. He presented their personal tax return to Mrs. Haymond and indicated where to sign. Mrs. Haymond did not discuss either InTex's return or petitioners' personal return with Mr. Strong. Mrs. Haymond signed the return, relying on Mr. Haymond's expertise for its correctness.

For the taxable year 1990, petitioners and InTex reported their respective incomes on the cash basis method of accounting. InTex reported the sale of the stock on its tax return. Schedule D of InTex's return reflected the stock sales price of $1,299,993; a basis of $869,314[2], which included the $330,000 commission payable to petitioner; and a resulting capital gain of $430,679. Petitioners, in turn, reported 100 percent of the

---

[2] The parties have stipulated this amount was $867,314; however, the return shows $869,314. (Also, sales price ($1,299,993) less the gain reported ($430,679) equals $869,314.) This discrepancy does not affect the amount in dispute (the $330,000 commission).

$430,679 as capital gain on their personal tax return.[3] Petitioners did not include the $330,000 commission in their income for the taxable year 1990.

Respondent disallowed the inclusion of the commission in InTex's basis in the stock, thus increasing petitioners' capital gain. Petitioners' return showed a tax of $59,689.00 whereas the tax required to be shown on the return as determined by respondent is $152,479.92.

OPINION

Inclusion of the Commission in Basis

The primary issue before us is whether the unpaid commission, to which Mr. Haymond was apparently entitled, should be taken into account in determining the basis of the Bonneville Pacific stock sold in 1990 by Intex for purposes of calculating Intex's capital gain required to be reported by petitioners on their 1990 return.

Petitioners argue that including the commission in basis is proper, because the commission is a capital expenditure related to the stock and the gain on the stock must be recognized in the year of the sale. Respondent does not dispute that the commission is a capital expenditure or that gain must be reported in the year of sale, but challenges the inclusion of the

_____

[3] The 1990 Form 1040 Schedule D only asked for the amount of the net gain (loss) from S corporations.

commission in basis on the grounds that InTex, as a cash basis S

corporation, had not paid the commission.

Section 461(a) provides the general rule that "The amount of

any deduction or credit * * * shall be taken for the taxable year

which is the proper taxable year under the method of accounting

used in computing taxable income."  For the cash basis method:

> allowable deductions shall, as a general rule, be taken
> into account for the taxable year in which paid.  * *
> *.  If an expenditure results in the creation of an
> asset having a useful life which extends substantially
> beyond the close of the taxable year, such an
> expenditure may not be deductible, or may be deductible
> only in part, for the taxable year in which made.
> * * *  [Sec. 1.461-1(a), Income Tax Regs.]

Capital expenditures are not deductible.  Sec. 263(a); Woodward

v. Commissioner, 397 U.S. 572, 574-575 (1970).  Instead, an

adjustment to basis "shall in all cases be made * * * for

expenditures * * * properly chargeable to capital account".  Sec.

1016(a)(1).

Federal income tax is computed on the basis of an annual

accounting.  Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931).

Expenses paid in one year cannot be used by a cash basis taxpayer

to offset gain realized in an earlier year; the taxpayer,

however, may be entitled to a loss in the year in which the

expenses are paid.  Schneider v. Commissioner, 65 T.C. 18, 31

(1975); Vaira v. Commissioner, 52 T.C. 986, 1003 (1969), revd.

and remanded on another issue 444 F.2d 770 (3d Cir. 1971);

Pittman v. Commissioner, 14 T.C. 449 (1950); Harchester Realty

Corp. v. Commissioner, T.C. Memo. 1961-184.  The same principle applies in the instant case.[4]

Petitioners argue that InTex's obligation to pay the commission is fixed and enforceable, like a deferred obligation to pay the purchase price of property, and therefore includable in basis.  In so arguing, petitioners seek to apply the rationale of Commissioner v. Tufts, 461 U.S. 300 (1983), and its predecessor, Crane v. Commissioner, 331 U.S. 1 (1947).  We disagree.  The fact of the matter is that the rationale of Tufts and Crane in the cash versus accrual context is sui generis as the Supreme Court's opinion in Tufts clearly reveals.  In our judgment, it has no application to the issue before us.

In a similar vein, we reject petitioners' attempt to remove a capital expenditure from the impact of section 461, notwithstanding the fact that that section speaks in terms of a "deduction".  Whether the item is within the category of a deduction or a capital expenditure, payment is a prerequisite for its being taken into account by a cash basis taxpayer.  Indeed, we have specifically so held where commissions were involved.

---

[4]  Factors cited by petitioners, such as that the amount of the commission was ascertainable and that the expense had been "incurred", are not relevant to a cash basis entity such as InTex.  Even if InTex used the accrual method of accounting and met all other requirements for accrual of the expense, sec. 267 would operate to delay a deduction at least until Mr. Haymond, as a related taxpayer on the cash method of accounting, included the commission in income.

Harchester Realty Corp. v. Commissioner, supra; cf. Vaira v. Commissioner, supra (unpaid appraisal fees); Landreth v. Commissioner, T.C. Memo. 1985-413, affd. in part, revd. in part and remanded 859 F.2d 643 (9th Cir. 1988) (unpaid legal fees).

## Accuracy-Related Penalty

Section 6662 imposes an accuracy-related penalty of 20 percent of the portion of the underpayment of tax attributable to any substantial understatement of income tax. Sec. 6662(a) and (b)(2). There is no question that the understatement of tax involved herein is substantial under section 6662(d)(1)(A).

The accuracy-related penalty will not be imposed with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to determine the taxpayer's proper tax liability. Id.

Generally, the taxpayer cannot avoid the duty of filing accurate returns by placing responsibility on a tax return preparer. Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987). Reliance on the advice of a professional does not

necessarily demonstrate reasonable cause and good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. Where the taxpayer claims reliance on an accountant who prepared the return, the taxpayer must establish that the correct information was provided to the accountant and that the item incorrectly claimed or reported in the return was the result of the accountant's error. Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978); Enoch v. Commissioner, 57 T.C. 781, 803 (1972).

Mr. Haymond and Mr. Strong, an experienced C.P.A., discussed the sale of the stock, and Mr. Haymond provided him with the resolution. Mr. Strong knew the commission had not been paid and that InTex used the cash method of accounting. It was not at Mr. Haymond's instruction, but rather on Mr. Strong's own initiative, that the commission was treated as part of the basis of the Bonneville Pacific stock.

We find that petitioners provided Mr. Strong with sufficient information and that their reliance on Mr. Strong was reasonable and in good faith. We think that the question of includability of the commission obligation was sufficiently technical so that neither Mr. Haymond (and a fortiori, Mrs. Haymond) could have been expected to dispute Mr. Strong's treatment. See United States v. Boyle, 469 U.S. 241, 251 (1983) ("Most taxpayers are not competent to discern error in the substantive advice of an accountant or an attorney"); cf. Olsen Associates, Inc. v. United

<u>States</u>, 853 F. Supp. 396 (M.D. Fla. 1993) (where the treatment accorded compensation expense was held not to have been reasonable and in good faith but the treatment of depreciation was held to have satisfied such requirement); <u>Metra Chem Corp. v. Commissioner</u>, 88 T.C. at 661-662 (where the treatment of cash dividends actually received, which are customarily recognized as taxable, overcame the reliance on professional advice and constituted negligence but such reliance avoided negligence where depreciation was involved).

We hold that petitioners are not liable for the accuracy-related penalty.

Innocent Spouse

Section 6013(e)(1) provides if:

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement,

then the other spouse shall be relieved of liability for tax (including interest, penalties, and other

amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

The taxpayer has the burden of proving that he or she meets each of these requirements; a failure to prove any one of these requirements will prevent the taxpayer from qualifying for relief.  Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

Petitioners filed a joint tax return for the year at issue and substantially understated their tax.  Petitioners argue that if the Court holds for respondent on the issue of the inclusion of the commission in basis, then such inclusion was grossly erroneous, and Mrs. Haymond is an innocent spouse.

For items of basis, "grossly erroneous items" means any claim in an amount for which there is no basis in fact or law. Sec. 6013(e)(2)(B).  There is no basis in law or fact if the claim is fraudulent, phony, frivolous, or groundless.  Feldman v. Commissioner, 20 F.3d 1128, 1135 (11th Cir. 1994), affg. T.C. Memo. 1993-17; Russo v. Commissioner, 98 T.C. 28, 32 (1992).  The disallowance of an item is not, in and of itself, proof of the lack of basis in fact or in law.  Feldman v. Commissioner, supra at 1136; Russo v. Commissioner, supra.

The claim in the instant case was not fraudulent, phony, frivolous, or groundless.  The existence of the proposed

commission is not disputed.  Thus, there is a basis in fact. Commissions on stock transactions generally are includable in basis.  The question herein is whether such includability applies to a cash basis taxpayer where the commission has not been paid. We have held that it should not be so included but we have also held, in determining the application of the accuracy-related penalty, that a technical question of tax law was involved. Under such circumstances, we concluded that the claim in respect of the commission is not a grossly erroneous item.

Since Mrs. Haymond has failed to satisfy one of the conditions of section 6013(e)(1), she is not entitled to innocent spouse relief.  That being the case, we have no need to consider whether she satisfied the remaining conditions of section 6013(e)(1).

In keeping with the above holdings,

<u>Decision will be entered</u>

<u>for respondent as to the</u>

<u>deficiency and for petitioners</u>

<u>as to the penalty</u>.