John W. OWEN and Glenda F. McCormick, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 97–2564–TUBRE.

United States District Court, W.D. Tennessee, Western Division.

Dec. 17, 1998.

Order Denying Reconsideration, Feb. 23, 1999.

---

James T. Bland, Law Offices of James T. Bland, Memphis, TN, for John W. Owen, Glenda F. McCormick.

David M. Katinsky, Department of Justice, Tax Division, Washington, DC, for United States of America.

## ORDER ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

TURNER, District Judge.

Plaintiffs John Owen and Glenda McCormick brought this action to recover $74,107 of federal income tax paid for the 1987 tax year plus statutory additions. Presently before the court are plaintiffs' and defendant United

States' cross-motions for partial summary judgment.

## I. *Standard of Review*

The moving party is entitled to summary judgment where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court's function is not to weigh the evidence or judge its truth; rather, the court must determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law governing the case will determine what issues of fact are material. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

A summary judgment movant "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

If the movant carries its burden of demonstrating that the non-moving party has not established an essential element of that party's case, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue of triable fact. Fed.R.Civ.P. 56(e). To meet this burden, the non-movant must present sufficient countervailing evidence such that a jury could return a verdict favorable to the non-moving party. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. The non-moving party "may not rest upon the mere allegations or denials of [its] ... pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

## II. *Burden of Proof*

"In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover." *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (citing *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932)). The Commissioner's determination is entitled to a presumption of correctness, and the plaintiff bears the burden of proving that the Commissioner's determination is wrong. *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Under this burden, the taxpayer must substantiate the deductions he claims he is entitled to. *Blackburn v. Commissioner,* 681 F.2d 461, 462 (6th Cir.1982) (affirming Tax Court's disallowance of deductions where taxpayer failed to offer documentation to substantiate his claims); *Davis v. Commissioner,* 674 F.2d 553, 553–54 (6th Cir.1982) (same).

## III. *Background*

In March of 1993 plaintiffs, who are cash basis taxpayers, filed a claim with the Internal Revenue Service for a refund of $74,107 in taxes paid in 1987 plus statutory additions. The IRS disallowed the refund claim and sent plaintiffs a Notice of Disallowance on June 21, 1995. Plaintiffs then initiated this action on June 23, 1997.

Plaintiffs' refund claim is based on several distinct factors, the following of which are at issue in the cross-motions for partial summary judgment. The majority of the alleged overpayment stems from $240,405 in improvements allegedly made to office condominiums that the plaintiffs sold during 1987. Plaintiffs claim the cost of these improvements should be added to the basis of the condominiums, thus affecting the gain/loss computation on their sale. The $240,405 is made up of four smaller amounts, including $156,000, $48,225, and $20,792 allegedly paid for physical improvements to the property, and $15,388 paid out of the sale proceeds to a bank at closing.

The refund claim also sets forth operating costs allegedly paid by plaintiffs on the condominiums not previously deducted. Specifically, plaintiffs claim they are entitled to an additional $3,377 deduction for real estate taxes and an additional $655 deduction for mortgage interest expense. Plaintiffs' original tax return claimed $33,014 in rental expenses on the condominiums, including $27,758 in mortgage interest expense and $2,015 in property taxes. Plaintiffs' refund claim alleges these amounts should have been $28,413 and $5,392, respectively, reflecting increases of $655 and $3,377, respectively.

Plaintiffs also claim they are entitled to an additional depreciation deduction of $1,269 on a warehouse based on a recomputation made in accordance with their claim for refund. Plaintiffs' original return claimed $3,780 in depreciation on the warehouse, and their claim for refund alleges the appropriate amount is $5,049. The increase results from $26,612 in improvements allegedly made to the warehouse that increased its depreciable basis.

## IV. *Analysis*

### 1. *Improvements to the Condominiums*

Plaintiffs claim $240,425 worth of improvements were made to the condominiums before they were sold but that this amount was never incorporated into the condominiums' basis. To substantiate that the improvements were made, plaintiffs have submitted copies of three promissory notes in the amounts of $156,000, $20,792 and $84,225, respectively, issued to Section Seven Contractors, Inc., allegedly in payment for the improvements. Plaintiffs have offered no evidence to support their claim that the remaining $15,388 ($240,425 less the sum of $156,000, $20,792 and $84,225) was related to improvements made on the condominiums.

Defendant has moved for partial summary judgment on this issue only with respect to the $15,388 paid by plaintiffs to the bank out of the proceeds from the sale of the condominiums. Plaintiffs have since conceded that the $15,388 should not be added to the basis of the sold condominiums. Thus, only $225,017 ($240,405 − $15,388) remains at issue pertaining to physical improvements allegedly made to the condominiums. Plaintiffs have moved for partial summary judgment on the remaining $225,017 at issue.

Cash basis taxpayers may only deduct expenses in the year they pay cash for the expense. *Eckert v. Burnet*, 283 U.S. 140, 141–42, 51 S.Ct. 373, 75 L.Ed. 911 (1931). Delivering a promissory note to a creditor in payment of the expense does not entitle a taxpayer to a deduction until the taxpayer pays the note. *See Helvering v. Price*, 309 U.S. 409, 413, 60 S.Ct. 673, 84 L.Ed. 836 (1940); *Patmon, Young & Kirk, Professional Corp. v. Commissioner*, 536 F.2d 142, 143–44 (6th Cir.1976). The same reasoning holds true where a taxpayer sells property. Although a taxpayer is entitled to increase his basis for expenditures properly chargeable to capital, I.R.C. § 1016, a cash basis taxpayer has not made an expenditure that will increase his basis where he only issues a secured promissory note. *Jenkins v. Bitgood*, 101 F.2d 17, 19 (2d Cir.1939). It is not until the note is actually paid that a cash basis taxpayer can increase his basis. *Id.*

Defendant asserts that there is a genuine issue of material fact as to whether Owen ever paid the promissory notes issued to Section Seven. Owen owned and controlled Section Seven, and Owen decided to accept the notes on behalf of Section Seven as payment. There is no evidence that Owen paid the notes in 1987, and in fact, Owen testifies that he never paid Section Seven.[1] The only payments Owen claims he made were a $50,000 and $126,000 payment to G.F. Walter in 1990 which claimed at that time to be the holder in due course on the notes.[2] This creates at least two issues of material fact sufficient to preclude partial summary judgment on this issue. First, plaintiffs may not increase their basis in the condominiums in 1987 if the notes issued for the improvements were not paid until 1990. Second, plaintiffs only offer evidence of having paid $176,000 towards the $225,017 in notes. As the notes

---

1. The court notes that "paid and canceled" was written on the three promissory notes. However, Owen testified that he did not know who wrote this on the notes, and he has not testified that the notes were in fact paid. Furthermore, this writing is hearsay, and is not admissible to prove the notes were paid. *See* Fed.R.Evid. 801 and 802. Moreover, even if the writing was admissible, it does not show when the notes were paid.

2. Plaintiffs' motion for partial summary judgment lists as an undisputed material fact their production of documentary evidence of full payment of the notes in question. Defendant asserts it never received any such documentary evidence. The court has reviewed the record, and it seems plaintiffs' documentary evidence consists of copies of the promissory notes themselves and evidence of the payments to G.F. Walter. The insufficiency of this evidence is discussed in the text of this opinion, and no other evidence was found.

bore interest at 10 percent, a large portion of the $176,000 in payments would appear to be allocable to interest. Thus, plaintiffs have offered no evidence of having ever paid the full principal amount of the notes. Therefore, the court finds plaintiffs have not satisfied their burden of showing they are entitled to increase the basis of the condominiums in 1987 by $225,017.[3]

Accordingly, plaintiffs' motion for partial summary judgment is denied with respect to the $225,017 in physical improvements allegedly made to the condominiums. Defendant's motion for partial summary judgment is granted and plaintiffs' motion for partial summary judgment is denied with respect to the $15,388 paid to the bank out of the condominium sale proceeds.

### 2. Mortgage Interest and Property Tax Expense on the Condominiums

Plaintiffs claim they paid an additional $655 of mortgage interest expense and $3,377 in property taxes not deducted on their original 1987 return.

█ As substantiation of these amounts plaintiffs have produced a copy of a Seller's Settlement Sheet which reflects the condominium sale proceeds and costs associated with the sale. Listed as the "Net to Retire Loan" is $264,572.73. Next to this amount is a handwritten plus sign and then the amount of $638.61. Immediately below the net to retire loan amount is $15,338.06 listed as the

"Union Planters National Bank payoff." Next to this amount is a handwritten plus sign and then the amount of $16.31. The handwritten amounts of $638.61 and $16.31 are in a single hand drawn circle which is labeled "Interest Exp." These amounts total $654.92 which plaintiffs claim is the additional mortgage interest expense they incurred but never deducted. There are also handwritten notations in the margin of the settlement sheet pertaining to $1,606.74 and $1,770.47 in property taxes.[4] These two figures add up to the $3,377 additional property tax plaintiffs claim they are entitled to deduct. There is no supporting documentation to clarify either the mortgage interest or property tax amounts.[5] Plaintiffs have provided no information on who made the handwritten notations, and Owen testified that he did not know who made the handwritten notations. Owen also admitted in his deposition that he could only speculate why the additional expenses were being claimed in the refund claim, and that he believed his accountant must have found some supporting documentation unavailable to her when the original return was filed. Owen's speculation is not admissible evidence. See Fed.R.Evid. 602. Plaintiffs have offered no evidence as to what this additional evidence was. Nor is there any evidence that anyone knows exactly what the handwritten amounts refer to.

The court finds the evidence of the handwritten notations would be inadmissible at

---

3. The court therefore finds it unnecessary to address other issues raised by defendant in response to plaintiffs' motion for partial summary judgment on this issue, including whether the notes evidenced a bona fide debt or whether the improvements were actually a constructive dividend from Section Seven to Owen; whether the improvements to the condominiums were actually worth $225,017; whether G.F. Walter was actually a holder in due course on the notes; and whether Owen's payments to G.F. Walter were on account of the notes.

4. Plaintiffs do not focus on the handwritten notations as evidence of the additional property taxes, instead claiming they have submitted other evidence. The court notes, however, that these two amounts appear to result from small amounts being added to $1,565.54 and $1,723.43 in prorated property taxes actually listed on the property settlement sheet. Owen testified that the settlement sheet would have been available to

Agee at the filing of the original return, however, thus making it unclear why at least $3,289 ($1,566 + $1,723) was not claimed as property tax expense on the original return. Only $2,015 in property taxes was claimed on the original return. Rather than guess at the meaning behind this, the court merely notes that plaintiffs have offered no substantiation for any of these amounts.

5. Plaintiffs only documentary evidence of the additional mortgage interest expense is the settlement sheet with the handwritten notations. With respect to the additional property tax, plaintiffs claim they have provided defendant with documentation that the $1,606.74 is for taxes paid to the City of Memphis and that the $1,770.47 is for taxes paid to the County. Defendant disputes ever having received such documentation, and the court has not found any documentation after a careful review of the record.

trial and it is therefore inadmissible for purposes of asserting or defending a motion for summary judgment. The handwritten notations are hearsay. *See* Fed.R.Evid. 801 and 802.

■ Plaintiffs also offer the deposition testimony of Ann Agee, C.P.A., to support these additional deductions. Agee prepared both the plaintiffs' original 1987 return and the claim for refund.[6] Agee could only testify, however, that her reason for claiming the increased expenses was that she "probably had some documents she didn't have before; but that is just an assumption." Agee also testifies she was meticulous about requiring such documentation.

The court finds Agee's testimony would be admissible to prove she had a habit of requiring documentary support for refund claims, and that this documentation existed at some point. *See* Fed.R.Evid. 406. However, Agee's testimony is not admissible under the hearsay rules. To allow her testimony as proof of the content of the documentation would violate the hearsay rule to the extent that the contents of the documents were intended as an assertion (e.g., you owe me money, as in an invoice; X's check to X's creditor was cashed by the bank as the bank's stamp indicated on the back of the check). *See* Fed.R.Evid. 801 and 802.[7] Moreover, the simple fact that documentation did exist at one point is irrelevant, however, as the issue is whether plaintiffs can substantiate the actual expenditures. Plaintiffs have produced no admissible evidence with respect to substantiating the actual expenditures, and the court therefore finds plaintiffs have not met their burden of proving the Commissioner's denial of the deductions as erroneous. Accordingly, defendant's motion for partial summary judgment is granted with respect to the additional mortgage interest expense and property taxes plaintiffs claimed in their refund claim.

### 3. *Depreciation Expense on the Warehouse*

Plaintiffs claim they are entitled to $1,269 in warehouse depreciation not taken on their original return. Plaintiffs claim they are entitled to this additional depreciation because they made $26,612 worth of improvements to the warehouse that were not reflected in the original depreciation calculation. Both plaintiffs and defendant have moved for partial summary judgment on this issue.

In order to survive summary judgment, plaintiffs must substantiate the $26,612 worth of improvements to the property. *See Lary v. United States,* 608 F.Supp. 258, 262 (N.D.Ala.1985), *aff'd,* 787 F.2d 1538 (11th Cir.1986) (finding plaintiff must produce evidence to establish cost basis of assets in order to take claimed depreciation deduction).

Plaintiffs have produced no documentary evidence to support the $26,612 worth of improvements. In response to the defendant's motion for partial summary judgment, plaintiffs claim they attached to their original claim for refund copies of invoices and canceled notes in support of these improvements, but the plaintiffs do not produce copies to the court. Defendant claims no such documentation was ever submitted. The court has examined copies of plaintiffs' claim for refund and has not found any supporting documentation. The claim for refund merely provides a depreciation schedule showing an additional asset (the improvements) and the depreciation that was taken on it. There is no documentation in support of the actual expenditure.

Plaintiffs' accountant testified that her records that would substantiate these improvements were destroyed due to their age.

---

6. This is not entirely clear from the record, as Agee at one point denies preparing the claim for refund and states that it was someone in her office. At other points in her testimony she states she has little or no recollection on what work she did pertaining to either the original return or the claim for refund. Defendant has not challenged Agee's personal knowledge of these matters, however, and the court will assume for purposes of these motions that she is qualified to testify. *See* Fed.R.Evid. 602.

7. Agee's testimony of the content of a lost or destroyed document might suffice to prove the content of the document under Fed.R.Evid. 1004, but this is not sufficient to cure the hearsay problem.

Plaintiffs state, however, that they were nevertheless "able to provide copies of the documentation to the Defendant during the administrative proceedings (e.g., the initial audit of their 1987 U.S. income tax return, the audit of their Claim for Refund for 1987 and the Appeals Office consideration of the denial of their Claim for Refund), and the discovery proceedings herein." Defendant asserts that it never received any documentation with respect to the $26,612 in improvements. Contrary to plaintiffs' legal memorandum, Owen testified in his deposition that no documentation exists other than the depreciation schedule listing the property and the depreciation taken. In any event, the court has carefully examined the record and also finds it bereft of any documentation.

■ Instead, plaintiffs again offer the deposition testimony of Agee. Agee has testified that she has no actual documentation to support the $26,612 expenditure, but that she believes such documentation must have existed when the claim for refund was prepared because it was her habit to obtain supporting documentation when requesting refunds for her clients. Agee has admitted, however, that she cannot remember exactly what documentation existed in support of the expenditure.

Agee has not testified that she has personal knowledge of whether plaintiffs actually expended $26,612 for improvements. Instead, she has testified that documentation to support the claim that a $26,612 expenditure was made must, at one time, have existed. This testimony by itself, however, is not relevant. She offers no testimony of the content of those documents. The burden is on the plaintiffs to produce substantiation of their claim. Evidence that documents existed at one time does not satisfy this burden. The contents of the documents must be known before their value as substantiation can be evaluated. Without more, Agee's testimony as to her habits is insufficient to raise a genuine issue of fact.

Agee's testimony is not admissible to substantiate that the expenditures were actually made or what they were made for. While Agee arguably has admissible knowledge that documentation of the expenditures existed, there is no evidence of her having personal knowledge of the expenditures actually being made. See Fed.R.Evid. 602. Even if plaintiffs could through Agee's testimony establish the content of the documents, to the extent Agee's testimony is being offered to prove that the documents must have shown that $26,612 was paid by plaintiffs for improvements and that such expenditure must have therefore been made, her testimony is being offered to prove the truth of the matters asserted in those documents (i.e., payment and reason for payment) and is hearsay. See Fed.R.Evid. 801 and 802.[8]

The court finds plaintiffs have failed to produce any admissible substantiation on the $26,612 improvement made to the warehouse. Accordingly, the court grants defendant's motion for partial summary judgment and denies plaintiffs' motion for partial summary judgment with respect to the additional $1,269 in claimed depreciation expense.

## V. Conclusion

For the reasons stated above, defendant's motion for partial summary judgment is granted. Plaintiffs' motion for partial summary judgment is denied.

## ORDER ON PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs John Owen and Glenda McCormick have filed a motion asking the court to

---

**8.** Defendant also asserts that to the extent the testimony of Agee is being offered to prove the substance of the documentation, it is inadmissible as being in violation of the best evidence rule. Although plaintiffs do contradict themselves, Owen has testified that no documentation exists to substantiate this claim, presumably because Agee's records were destroyed due to their age. The best evidence rule will not preclude the testimony of Agee unless it is shown that the documentation was destroyed in bad faith. Fed. R.Evid. 1004. There is no evidence before the court of bad faith, and the court finds the best evidence rule is therefore not a bar to Agee's testimony.

However, if plaintiffs' legal memorandum is correct in its position that, contradictory to Owen's testimony, documentation not before the court does exist, Agee's testimony would violate the best evidence rule as to existing documents. The documentation has not been produced, however, and there is no evidence that it is forthcoming.

reconsider a portion of its order dated December 17, 1998, denying plaintiffs' motion for partial summary judgment. In that order, the court held, among other things, that plaintiffs were not entitled to increase their basis in property for certain improvements made to their property.

### I. *Plaintiffs' Basis in the Property*

At issue is $225,017 in improvements allegedly made to office condominiums that the plaintiffs sold in 1987. Plaintiffs are cash basis taxpayers who claim that the cost of these improvements should be added to the basis of the condominiums, thus affecting the gain/loss computation on their sale. Rather than paying cash for the improvements at the time they were allegedly made, plaintiffs issued three promissory notes totaling $225,017 to Section Seven Contractors, Inc., an entity that appears to have been controlled by John Owen. The parties have stipulated that any payments made on the notes were not made until after 1987.

Section 1011 governs a taxpayer's basis in his property.[1] That section provides that a taxpayer's adjusted basis in his property shall be his basis as provided for in § 1012 and as adjusted by § 1016.

Section 1012 provides that a taxpayer's initial basis in his property is the cost of such property. Regulation § 1.1012–1 states that "cost is the amount paid for such property in cash or other property." Cost basis includes "personal liabilities incurred by the purchaser and liabilities subject to which the property is taken." *Conroe Office Bldg., Ltd. v. Commissioner*, 61 T.C.M. (CCH) 2655, 2662 (1991) (citing *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947)). *See also Commissioner v. Tufts*, 461 U.S. 300, 307–08, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983) ("Because of the obligation to repay, the taxpayer is entitled to include the amount of the loan in computing his basis in the property; the loan, under § 1012, is part of the taxpayer's cost of the property."); *Berto-*

*li v. Commissioner*, 103 T.C. 501, 515, 1994 WL 579942 (1994) ("Ordinarily, a purchaser's cost basis under section 1012 includes both promissory notes issued by the purchaser and any liabilities of the seller assumed by the purchaser as consideration for the sale."). Plaintiffs argue that by issuing promissory notes as payment for the improvements, they have basis under *Crane* and *Conroe Office Bldg.* Those cases, however, are distinguishable because they dealt with a taxpayer's initial cost basis in his property, rather than adjustments to basis for subsequent expenditures.

Section 1016 governs adjustments to the basis of property. That section states that "[p]roper adjustment in respect of the property shall in all cases be made ... for expenditures, receipts, losses, or other items, properly chargeable to capital account."[2]

Defendant analogizes expenditures for capital improvements to the deductibility of expenses and argues that since cash basis taxpayers cannot deduct expenses until they are actually paid (regardless if they issue a note), they should not be able to increase their basis in property for improvements until cash is actually expended. In support of its position, defendant cites several cases that have held a cash basis taxpayer may not increase his basis for a capital cost in Year One when the capital cost was not paid for until Year Two or later. *See, e.g., Haymond v. Commissioner*, 73 T.C.M. (CCH) 3179 (1997); *Vaira v. Commissioner*, 52 T.C. 986, 1003, 1969 WL 1731 (1969), *rev'd on other grounds*, 444 F.2d 770 (3d Cir.1971); *Harchester Realty Corp. v. Commissioner*, 20 T.C.M. (CCH) 922 (1961). Instead, these cases hold that the taxpayer may claim a capital loss only in the year he actually pays for the capital cost. *Vaira*, 52 T.C. at 1003. These cases are distinguishable, however, because the taxpayers at issue did not issue a promissory note in Year One as payment for the expenditures, which is essentially the issue in the case at bar.

---

**1.** All section references are to the Internal Revenue Code, 26 U.S.C. § 1 *et seq*.

**2.** The requirement that expenditures or other items must be properly chargeable to capital account ensures that the expenditure or other

item is for a capital item, rather than for, among other things, an expense that should be expensed in the current year. Defendant has not asserted that improvements made to the property are not properly chargeable to capital account.

A hypothetical example can easily illustrate the issue before the court. Assume that hypothetical cash basis taxpayer A incurs certain deductible costs in Year One but that he does not pay for the costs until Year Two. Can taxpayer A take a deduction in Year One? No, under § 461. Assume instead that taxpayer A issues his promissory note in Year One in payment for the costs, but that he does not pay the note until Year Two. Can taxpayer A now deduct his expenses in Year One? No, under *Helvering v. Price*, 309 U.S. 409, 413, 60 S.Ct. 673, 84 L.Ed. 836 (1940); *Eckert v. Burnet*, 283 U.S. 140, 141–42, 51 S.Ct. 373, 75 L.Ed. 911 (1931); *Patmon, Young & Kirk v. Commissioner*, 536 F.2d 142, 143–44 (6th Cir.1976). Under those cases, the mere issuance of a promissory note by a cash basis taxpayer does not alter the result. Now assume hypothetical cash basis taxpayer B gives his note in exchange for property. Does taxpayer B obtain basis in his property for issuing his note? Yes, under *Crane* and *Conroe Office Bldg.* Assume taxpayer B makes certain improvements to the property in Year One, but that he does not pay for the improvements until Year Two. Can taxpayer B increase his basis in Year One for the cost of the improvements? No, under *Haymond* and *Vaira*. Now assume that taxpayer B gives his note in Year One in payment for the improvements. Can taxpayer B now increase his basis for the cost of the improvements? That is the issue before the court.

■ The court holds that plaintiffs, as cash basis taxpayers, cannot increase their 1987 basis in property for improvements made to that property during 1987 that were "paid" for in 1987 with promissory notes, when payments were not made on those notes until a subsequent year. As plaintiffs make payments on the notes in subsequent years, they can increase their basis at that time.

There are several reasons that justify the court's determination. To begin with, plaintiffs have cited no case factually similar to the case at bar, while defendant has offered some authority for its position. In *Jenkins v. Bitgood*, 101 F.2d 17, 18 (2d Cir.1939), the cash basis taxpayer gave his $25,000 promissory note to a bank in exchange for certain bonds worth $5,550 in 1931. The bonds became worthless in 1932, but no payments were made on the note until 1934. The taxpayer claimed a deduction on his 1932 income tax return for $19,450, representing the difference between the promissory note and the market value of the bonds on the date he received them. The Second Circuit agreed with the taxpayer's contention that the $19,450 should be treated as a contribution to the bank's capital. However, the Second Circuit disallowed the claimed deduction for the loss. Analyzing the situation under the predecessor to § 1016, the Second Circuit stated:

> The basis for determining the amount of deduction for a loss sustained under [§ 165] is the adjusted basis provided in [§§ 1016, 1017, 1018]. This provides that proper adjustment shall be made "for expenditures, receipts, losses, or other items, properly chargeable to capital account." We do not see how a taxpayer on the cash basis can treat as an "expenditure" the mere incurring of a liability for a capital contribution. Not until the note is paid will he make an "expenditure" that increases the cost of his stock.

*Id.* at 19. Under *Jenkins*, plaintiffs in the case at bar would not be able to increase their basis in the property for improvements paid for with a promissory note.[3]

■ Another reason favoring defendant's position is the language of §§ 1012 and 1016. The words of a section in the Internal Revenue Code should be interpreted, where possible, in their ordinary, everyday senses. *See Crane*, 331 U.S. at 6, 67 S.Ct. 1047. Section 1012 provides that the "basis of property shall be the cost of such property." As noted by the Supreme Court, "cost," as that term is used in § 1012, includes debt because of the expected obligation to repay. *Tufts*, 461 U.S. at 307–08, 103 S.Ct. 1826. In terms of ordinary, everyday meaning, that position is easily defended. *See Webster's Third New International Dictionary* 515 (1986) (defining

---

**3.** Although *Jenkins* was decided prior to *Crane*, the Supreme Court has cited it more recently with apparent approval. *See Don E. Williams* *Co. v. Commissioner*, 429 U.S. 569, 578 n. 9, 97 S.Ct. 850, 51 L.Ed.2d 48 (1977).

"cost" as "the amount or equivalent paid or given or charged *or engaged to be paid or given* for anything bought or taken in barter or for service rendered.") (emphasis added). Section 1016, however, states that adjustments shall be made to basis for "expenditures, receipts, losses, or other items." Section 1016 does not speak in terms of cost.[4] The ordinary, everyday meaning of the term "expenditures" does not include incurring liability. *See id.* at 800 (defining "expenditure" as "the act or process of expending"); *id.* at 799 (defining "expend" as "to pay out or distribute.").[5] Nor does the ordinary, everyday meaning of "receipts" or "losses" include incurring liability. *See Webster's* at 1894, 1338. Section § 1016 does state that an adjustment to basis for "other items" may also be appropriate. However, the court is unaware of any authority that defines "other items," and it is hesitant to place debt within that category. Congress was specific enough to list expenditures, receipts and losses. Presumably, if it meant to include "debt" it would have said so rather than leaving it for the courts to judicially determine that "other items" includes such a major component of everyday financial life. The court finds such a determination is better left to Congress.

■ The court is also aware of its obligation to construe the various sections of the Internal Revenue Code in unison. Plaintiffs argue that it would be arbitrary to allow them to obtain cost basis in property when it is initially purchased with debt, but not to allow them to obtain basis where improvements to that property are paid for with debt. Plaintiffs' argument is not without merit. However, to allow plaintiffs to obtain basis for improvements paid for with debt would give rise to greater inconsistencies within the Internal Revenue Code. When dealing with cash basis taxpayers, the overriding goal of the Internal Revenue Code is to preclude realization of income or deduction of expenses until cash is actually received or paid. In this context, issuing a promissory note as payment for a benefit received in the current year is not a substitute for the payment of cash that allows the cash basis taxpayer to take a current year deduction. That result is sound. The obligation to pay for the benefit existed both before and after the promissory note was issued. Issuing a promissory note is not a magic talisman. To the contrary, the promissory note only represents the underlying debt that already existed. The court is aware of no logical reason to artificially alter that result when a cash basis taxpayer issues a promissory note in connection with improvements to property. The issuance of the promissory note itself should be irrelevant. Thus, the question becomes whether cash basis taxpayers should be allowed to take into account in the current year capitalizeable benefits received but not paid for in the current year, regardless of whether the obligation is represented by a note. The court finds that they should not. To hold otherwise would violate the fundamental principle that cash basis taxpayers do not recognize income or expenses until an expenditure is made. Allowing a cash basis taxpayer to increase his basis where he issues a promissory note for improvements to property would avail the taxpayer of an immediate increase in depreciation deductions and would afford him the opportunity to decrease any potential gain or increase any potential loss should the property be sold, without having made any cash outlay. To hold otherwise would also remove any distinction between cash and accrual basis taxpayers when dealing with capital expenditures, a result for which the court finds no authority within the Internal Revenue Code.

---

4. Treasury Reg. § 1.1016–2 provides that "[t]he cost or other basis shall be properly adjusted for any expenditure ... or other item, properly chargeable to capital account, including the cost of improvements and betterments made to the property." The regulation does not state whether cost in this context includes a cash basis taxpayer's obligation to pay for improvements.

5. *Black's Law Dictionary* defines expenditure as "[s]pending or payment of money; the act of expending, disbursing, or laying out of money; payment," and defines capital expenditure as "[a]n outlay of funds for the acquisition or improvement of a fixed asset which extends the life or increases the productivity of the asset. The expenditure for the acquisition of an asset should be capitalized and depreciated over the estimated useful life of the asset. I.R.C. § 263." *Black's Law Dictionary* 209, 577 (6th ed.1990).

Accordingly, plaintiffs' motion to reconsider is denied.

## II. *Summary Judgment*

The court's order of December 17, 1998, denied plaintiffs' motion for partial summary judgment with respect to the $225,017 in improvements based on the court's determination that plaintiffs could not, as a matter of law, increase their 1987 basis in the condominiums for improvements that had been paid for with promissory notes that were not satisfied until a subsequent year. In that same order the court also found that plaintiffs had only offered evidence of having paid $176,000 toward the notes in 1990, and that it appeared that a large portion of that amount would be allocable to interest. Plaintiffs have asked the court to reconsider that determination.

To the extent the court's earlier statement that it appeared as though a large portion of Owen's payment would be attributable to interest was a determination, the court finds it unnecessary to revisit it. The only tax year in question is 1987, and the court has ruled that Owen may not obtain basis in 1987 for promissory notes paid in a later year. Thus, what portion of Owen's alleged payment on the promissory notes in 1990 constitutes principal or interest is irrelevant to a determination of plaintiffs' basis in the improvements in 1987.

## III. *Conclusion*

For the foregoing reasons, plaintiffs' motion to reconsider is denied. Judgment shall be entered for defendant pursuant to Fed. Rule Civ.P. 52(c).[6]

---

6.  Although defendant had not filed a motion for summary judgment on this issue, the court determined as a matter of law that plaintiffs could not be successful. Thus, the court informed the parties that the scheduled trial would be unnecessary, and that judgment would be entered for defendant. This order and the court's order of December 17, 1998, shall represent the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(c).